Hamrick *et al. vs.* Rouse *et al.* &c.

No. 6.—WILLIAM F. HAMRICK and others, plaintiffs in error,. *vs.* JAMES R. ROUSE and others, Commissioners, &c., defendants in error.

[1.] The Legislature of 1853–'4, passed an Act repealing the Act of 1851, which provided that the county site of Lee County should be made permanent at the town of Starkville, and authorizing the removal of the court-house from said town. Certain citizens and holders of real estate in that place filed their bill, praying that the commissioners who were proceeding under the Act of 1854, to lay off a new town, and remove the public buildings from Starkville, might be enjoined on the ground that the Act impaired the obligation of the contract by which they held their lots, and deprived them of vested rights: *Held*, that the establishing of seats of justice is matter of political arrangement or expediency, and that in such matters one Legislature has no right to bind all subsequent Legislatures, and all posterity; that the phraseology of the Act of 1851, therefore, did not amount to a valid and binding contract with those who owned or might purchase real estate in Starkville, that the seat of justice should never be removed; and that they purchased their interests qualified by the absolute right of the State,. according to law, at any time, to change the seat of justice.

[2.] By the removal of the court-house from Starkville, there was no interference with any right the citizens had to the streets and squares in said town, which may have been dedicated to the public.

[3.] The compensation provided in the Act of 1854, to lot holders, is gratuitous, and the right of the commissioners to remove the court-house does not depend upon the payment of that as a *condition precedent.* If the Inferior Court refuse to make it, the citizens have a remedy by which they may compel them to perform their duty.

[4.] These commissioners are made the agents of the Legislature, to perform an act of political arrangement; and for that purpose, are clothed with the sovereign authority. If, in its performance, they have not selected an eligible site for the new town, or otherwise have failed in their duty, their discretion cannot be controlled by the Courts, unless they violate private rights; but the correction must be left to the Legislature.

[5.] If the Court below refuse to grant a *supersedeas*, and upon hearing a bill of exceptions, this should be found wrong, the judgment will not be reversed upon this ground, where it could avail nothing to correct that error.

Application for injunction.   Decision by Judge PERKINS, at Chambers.

In February, 1854, the General Assembly of the State pass-

ed an Act removing the county site of Lee County from Starkville, and authorizing commissioners named to select a new site, &c. Compensation was provided in the Act to the lot holders in Starkville.

William F. Hamrick and other lot holders in Starkville, filed a bill against the commissioners praying an injunction, and alleging as grounds therefor—1st. That to allow defendants to proceed and remove the seat of justice, would violate the obligation of the contract between the State and the lot holders of Starkville, they or their grantors having purchased the lots from commissioners appointed under an Act of the Assembly of 1832, locating the county site at Starkville, and authorizing the sale of town lots.    2d. Because it would divest a vested right. . 3d. Because it would be taking private property for public use, without just compensation, or any tender thereof, the commissioners having refused to pay the compensation provided in the Act.    4th. That by the permanent location, of the town of Starkville, and the laying out a public square and streets, and selling lots therein, and the continuous use of the same for more than twenty years as the county site of Lee, there was a dedication to the public for that purpose, and could not be changed in derogation of private rights.    5th. Because the place selected for the new site, is not an eligible one, as near the centre of the county as possible, as provided and contemplated by the Act.    Moreover, it was surrounded by swamps and marshes, which necessarily would render it unhealthy.    6th. Because the Act is unconstitutional and void.

The presiding Judge refused to grant the injunction, and error is assigned thereon.

Counsel for Hamrick and others applied, then, for a *supersedeas*, until the decision of the Supreme Court in the cause, which being refused, is also assigned as error.

W. A. HAWKINS for plaintiffs in error, contended—

1st. That the removal of the public site of the county of

Lee, if allowed, will violate the obligation of the contract between the parties to said contract.   *Charles River Bridge vs. Warren Bridge,* (7 *Pick.* 525, 532.)

2.  What it will divest vested rights.

3.  It will take private property for public use, without just compensation, or any tender thereof.

4.  That the permanent location of the capital of said county, at Starkville, the laying out a public square, the opening and constituting streets, and selling lots thereon, and the continuous use thereof for more than twenty years, was a *dedication* to the public for said purposes, and cannot be changed or destroyed.   (7 *Wend. R. Wyman vs. Mayor of N. Y. p* 500. *Mayor and Council of Macon vs. Frankin,* 12 *Ga. R.* 240. *City of Cincinnati vs. Whiles, Lessee, Pet. R.* 432.)

5.  Said use for more than twenty years amounts to a franchise, and cannot be changed, in derogation of rights.

6.  The Act of removal has not been pursued, the same providing for compensation, and none has been given or tendered.

7.  The spot selected was not an eligible one—as near the centre of the county as possible, as contemplated by said Act.

R. F. LYON for defendant in error.

A Statute establishing a public corporation for public purposes, as a county, town or city, is not considered a contract within the purview of the Constitution, and the Legislature may change, modify, enlarge or restrain such corporation. (*Cobb vs. Kingman,* 15 *Mass.* 197.   13 *Wend.* 325.   *State vs. Jones,* 1 *Iredell,* 414.   2 *Kent. Com.* 245.   3 *Story's Com.* 260.)

2.  The Act of 1832, making permanent the seat of justice for the county of Lee at Starkville, made no contract with any person, nor did it confer any powers on other persons, to contract that the seat of justice should forever remain there.   If that Act had conferred such powers or contained within itself such a contract, it would have conflicted with the sovereign powers of successive legislation, and consequently void.

3. That Act simply made Starkville the permanent seat of justice, for the convenience of the public, and when it ceased to promote that object, the Legislature not only had the right, but it became its imperative duty to change the seat, so as to provide for the wants of the public. (*Cloud vs. Tucker,* 1 *Blackford,* 285. *Blackwell vs. The Board of Justices, &c.* 2 *Blackford,* 143. *Armstrong vs. The Commissioners of Dearbon Co. Callender vs. Mars,* 1 *Pick.* 430. *Att'y Gen. vs. Stevens, Sax. Ch. R.* 380. *Ind'a Co. R. R. vs. The State,* 3 *Ired. R.* (*Porter*) 421.)

4. By the Act of the Legislature, authorizing the removal, the defendants were made the exclusive judges of the eligibility of the new seat, and of its convenience for the public, and no person or power, except the Legislature, could control their discretion or action in these particulars.

5. The removal, by the Act, is not made to depend upon compensation of the lot holders in Starkville, for injuries done them thereby; but for that, an ample and specific remedy is provided by the Act, and those persons may pursue that remedy or not.

JAS. JOHNSON, for the same, was stopped by the Court.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] Plaintiffs in error allege that the Act of February 7th, 1854, repealing an Act of December 26th, 1851, declaring that the county site and public buildings of Lee County shall be made permanent at the town of Starkville, and authorizing the removal of the court house therefrom, violates the obligations of the contract between those citizens who have purchased lots in said town, and the State; that it will deprive them of vested rights, and be taking from them private property for public purposes, without just compensation.

We hesitate in saying, that when the Legislature passes an Act phrased as is the Act of 1851, which provides that "a

county seat shall be permanent at a given place," it means to pledge the faith of the State, that it shall never be removed.

But if this be so, it is very certain that no Legislature has the right to bind all subsequent Legislatures, all posterity, as to any matter of mere political arrangement or expediency. The good faith of the State, or its people, under some circumstances, *in a moral point of view*, might become very decidedly pledged by the Legislature to such political arrangement; but still, as matter of contract, the Legislature could not bind posterity upon a subject of mere political expediency. Hence, if the Legislature of 1851 certainly intended, so far as they had any power over the subject, to fix the seat of justice at Starkville for all time, "yet," to use the language of Judge *Ruffin*, in the case of *The State vs. Jones et al.* (1 *Iredell*, 415,) "it would be entirely competent to the Legislature" (a subsequent Legislature) "to remove the seat of justice from that to any other place." And the reason is that which is there assigned by that distinguished Judge, "that this is matter of political arrangement and expediency, and necessarily the subject of Legislative discretion." This being so, when these citizens purchased in Starkville, they purchased an interest qualified by the absolute right of the State, at any time, to change the seat of justice, and must be held to have contracted subject to the law of the State in this regard.

For similar reasons, there were no vested rights divested by the removal of the court house, and no private property taken for public purposes, without compensation.

[2.] It was also maintained, that by the laying out of this village into streets and squares, the dedication of the same to the public, and the user of the same as such, for more than twenty years, these citizens could not now be deprived thereof.

This position might well be disputed, if it were necessary. If the State does not part with the right of eminent domain, when it grants its land to a private citizen, but may resume the same for public purposes, upon just compensation being made, it can hardly be said, that it has parted with its right of eminent domain, when it has dedicated land to the public, and

where political expediency makes it proper; that is, cannot, for the greater good of the public, withdraw its grant to the public.

But in this case, so far as this record informs us, there has been no interference, and none is meditated, with the right of enjoyment which the public have to the streets and squares of Starkville. It is only proposed to remove the court-house.

[3.] It seems that the Act of the Legislature, which authorizes the seat of justice to be removed from Starkville, gratuitously provides that compensation shall be made to those citizens whose property may be injured, in money or in lots, to be laid off in the new town. And it is now urged that such compensation has not been tendered or given, and that the seat of justice cannot be removed until this is done.

This compensation is not made a condition precedent. In fact, as we have said, it is but a gratuity. And upon it the political act which the commissioners are required to perform, has no dependence. If, after the seat of justice is removed, and within a fit and reasonable period, the Inferior Court of Lee County should not comply with the requirements of the Act and redeem the certificates which the commissioners of assessment are required to give to the owners of lots in Starkville, either " in money or in town lots of said selected site, at such rates as may be agreed upon by the parties at the new site," then there is an appropriate remedy, by which that Court can be required to do its duty.

It was urged that a tax of fifty per cent. on the State tax of Lee County, for the years 1854 and 1855, would not produce a sufficient amount for the liquidation of the claims for which this provision is made. We do not understand that satisfaction is to come alone out of this fund. The Inferior Court is required, by the law, to redeem these certificates, either in money or town lots, and this is a positive requisition of the Legislature. To assist them in doing this, they are authorized to levy this extra tax, "if they deem the same necessary for the purpose of carrying out the foregoing provisions."

[4.] It was also contended, that the commissioners should have been enjoined, because they had not selected an eligible

site for the new county seat, nor one near the centre of the county.

They were made the agents of the Legislature for the purpose of doing this act of political arrangement—for the purpose of selecting and laying off this new county site; and as such, they were clothed with a portion of the sovereign power and discretion. That discretion, so far as it depends upon the exercise of their judgment, no Court has a right to control, unless they violate *private rights.* The eligibility of that site, and whether or not it is near the centre of the county, are matters purely within their discretion and by their judgment to be determined. And if they have not wisely discharged the political duty assigned them, the Legislature must apply the correction.

[5.] It was also alleged that the Court below erred in refusing to grant the *supersedeas,* as asked.

The order of the Court would have been no stronger than the law. And that had already granted a *supersedeas.* The Court could have done no more. But if this refusal had been error, it could not now avail the plaintiff in error anything to have it corrected; so that it is unnecessary to say more about it.

Judgment affirmed.