700    SUPREME COURT OF GEORGIA.

D'Antignac vs. The City Council of Augusta.

# D'ANTIGNAC *vs.* THE CITY COUNCIL OF AUGUSTA.

1. In *ex parte* proceeding, under special authority, great strictness is required.

2. In proceedings under Statute authority, whereby a man may be deprived of his property, the Statute must be strictly pursued. Compliance with all its prerequisites must be shown.

3. Under an Ordinance of a municipal corporation, providing for the collection of taxes, in the following' words: "It shall be the duty of the collector and treasurer to give notice, in one or more of the Gazettes of the city, and to call at least once at the house of each person taxed, to demand the taxes; and unless said taxes be paid within two months from the date of said notice, it shall be his duty to make a return of such defaulters to the City Council, *and thereupon executions shall issue against the goods* or persons .of such defaulters." And further: "At the regular time for returning defaulters on the Digest, the collector and treasurer shall become liable for the amount, of the Digest, after deducting the sum for which defaulters are liable; and he shall be liable for the amount of all executions, not satisfied, which may remain in his hands, at the expiration of his term of service, unless he shall within ten days thereafter deliver them to the Clerk of Council." *Held,* That a call at the house of the tax-payer to demand his taxes, and a return of him as a defaulter, are prerequisites to the issue of execution; and that the former must be made within two months after notice in the Gazette, and the latter within the said collector's term of office, to authorize the issue of execution as provided in the Ordinance.

In Equity, and motion to dissolve injunction in Richmond Superior Court. Decided by Judge HOLT, at the October adjourned Term, 1860.

William M. D'Antignac exhibited his bill in equity against the city council of Augusta, and Foster Blodgett, in which the following charges and allegations of fact are embodied, that is to say:

In the year 1843, a business partnership which had before that time existed between the complainant and one John Hill, was dissolved; and the settlement then had of the business of. said partnership, showed an indebtedness, by Hill, to the complainant, of about eight thousand dollars. Hill being wholly unable to cancel said indebtedness, the complainant had to grant him indulgence, with the hope that, in after ` years, Hill could and would pay it off in small

**TAKING OR INJURING PRIVATE PROPERTY FOR PUBLIC PURPOSES.** "The taking or injuring of private property for the public benefit is the exercise of a high power,** and all the conditions and limitations provided by law, under which it may be done, should be closely followed. **Too much caution** in this respect **can not be observed** to prevent abuse and oppression. This Court in D'Antignac *v*. The City Council of Augusta, 31 Ga. 700, 710, announced and enforced the principle, upon' abundant authority, cited in the luminous opinion of Jenkins, J., who pronounced the judgments, 'That, in proceedings by statute authority, whereby a man may be deprived of 'his property, **the statute must be strictly pursued.** Compliance with all its prerequisites must be shown.' 67 Id. 194, 195." Frank *v*. City of Atlanta, 72 Ga. 432 (2).

sums. Hill was elected treasurer and collector of taxes of the city of Augusta, by the city council, which office yielded a considerable profit and salary to the incumbent. Hill agreed with complainant, that he would, out of his salary, pay the taxes due by the complainant to said city, so long as he held said office. Pursuant to said agreement and contract, and in fulfilment of the same, Hill did settle and pay the taxes due by the complainant to said city, for the years 1846, 1847, 1848 and 1849, of which he gave the complainant a written certificate, which is made an exhibit to the bill. Upon application for a similar certificate of the payment of the taxes due for subsequent years, Hill assured the complainant that he had made, or would make, arrangement to pay and account for such taxes, and would at a future time furnish the certificate, which assurance led to a postponement, from time to time, of the obtainment of any written evidence of the payment of such taxes, until Hill died without giving it. The following are copies of certain sections of the general ordinance of the city of Augusta, which were in force during the years 1850, 1851, 1852, 1853, 1854, 1855 and 1856, to wit:

Sec. 103. There shall be an officer known as the collector and treasurer of the city of Augusta, who shall be elected by the city council, by ballot, on the second Saturday in January, or at the first meeting thereafter, in every year, who shall hold his office until his successor is appointed and qualified, unless sooner removed by council, and who shall be allowed such salary as the city council may agree on, as a full compensation for his services; except such fees as are hereinafter particularly mentioned. He shall give bond with two or more approved securities, for the faithful discharge of his duties, in the sum of twenty thousand dollars.

Sec. 104. The collector and treasurer shall receive all moneys collected by the other officers of council on account of the corporation, and shall pay all demands by order of council, and keep a regular account of all moneys by him received and paid, which account shall be presented to council at their monthly meetings. All moneys received by him on account of the corporation, shall be immediately deposited in one of the banks of this city, in the name of the city council, and he shall, at every regular meeting of council, and at all times when required by the same, exhibit his

**TAXATION BY CITIES, RIGHT STRICTLY CONSTRUED.** "The right to seize and sell a man's property for his failure to perform a corporate duty, is the exercise of a high function that can only be justified by express law, and that law must be strictly construed; 20 Georgia, 639; 25 Ibid, 103; 31 Ibid, 700; 11 Ibid, 423.' So far, indeed, does this rule go, that the text books lay it down that a power to a corporation to levy and collect a tax does not include a power to seize and

bank-book settled up to the preceding day. No money belonging to the city council shall be drawn from the bank, except by a check, signed by the collector and treasurer.

Sec. 105. The collector·and treasurer shall collect all taxes due to the city, unless the collection thereof is otherwise provided for. It shall be the duty of said collector and treasurer to give notice, in one or more of the gazettes of the city, and to call at least once at the house of each person taxed, to demand the taxes, and unless said taxes be paid within two months from the date of said notice, it shall be his duty to make a return of such defaulters to the city council, and thereupon executions shall issue against the goods or person of such defaulters, for the amount of his, her or their taxes, with the addition of ten per cent. The collector and treasurer shall, at all times, have the privilege of obtaining executions against any individual or individuals, when he has good reason to believe that such person or persons are about to leave the city, and there is danger of losing the whole or some part of the taxes due by such person or persons.

Sec. 107. At the regular time for returning defaulters on the digest, the collector and treasurer shall become liable for the amount of the digest, after deducting the same for which defaulters are returned, and he shall become liable for the amount of all executions issued at the expiration of the period in which, by regular course of law, they might have been satisfied, unless he show sufficient cause why satisfaction has not been obtained; and he shall be liable for the amount of all executions not satisfied, which may remain in his hands at the expiration of his term of service, unless he shall within ten days thereafter deliver them to the city council.

Sec. 108. Whenever it shall appear that the collector and treasurer has received money on acount of the corporation, or has become liable for it under this ordinance, if he does not within ten days, deposit the same in bank, or pay it to his sucessor, as the case may require, an execution shall issue immediately for such sums against him and his securities. In case the collector and treasurer shall fail to make a settlement, and pay over the moneys by him collected, according to the provisions of this ordinance, the mayor, or chairman of council, if the mayor be absent, shall order

sell, and that the corporation can only collect by suit: Dillon on Corporations, §656, and the cases cited. This Court, in 40 Georgia, held that a marshal could not put the purchaser in possession, unless expressly authorized." Ansley v. Wilson, 50 Ga. 422; DuBignon v. Brunswick, 106 Ga. 324.

"It is well settled that a municipal corporation has no power or authority to make local assessments unless the authority is clearly

execution to issue against him and his securities for the amount which he is in arrears, directed to the marshal of said city, who is hereby required to levy the same immediately on so much of the goods and chattels, lands and tenements of such collector and treasurer, and his securities, as shall be sufficient to discharge the said arrearages and costs, giving such notice of the sale thereof as the laws of the State require of sheriffs taking property under execution in similar cases, and shall be allowed the same fees for services performed by him under this ordinance as are allowed to sheriffs for similar services.

The following are copies of certain sections of the general ordinance of the city of Augusta, which were of force during the years 1857, 1858 and 1859, to wit:

Sec. 109. Is similar to Section 103, hereinbefore set forth.

Sec. 110. Is similar to Section 104, hereinbefore set forth.

Sec. 111. The collector and treasurer shall collect all taxes due to the city, unless the collection thereof is otherwise provided for. It shall be the duty of the said collector and treasurer to give notice in one or more of the gazettes of this city, and all persons liable for city taxes shall be required personally, or by agent, to pay the same at his office, and unless said taxes are paid within two months from the date of said notice, it shall be his duty to make return of such defaulters to the city council, and thereupon executions shall issue against the goods or person of such defaulters, for the amount of their taxes, with ten per cent. The collector and treasurer shall at all times have the privilege of obtaining executions against any individual or individuals, when he has good reason to believe that such person or persons are about to leave the city, and there is danger of losing the whole or some part of the taxes due by such person or persons. The collector and treasurer shall be required to attend at his office daily (except Sundays) from 9 o'clock, A. M., until 1 o'clock, P. M., for thirty consecutive days from the date of his advertisement in the city papers, giving notice that the digests of the city taxes for the current year have been completed, and turned over to him for collection. After that time, his regular office hours shall be from 9 o'clock, A. M., to 1 o'clock, P. M. (except Sundays). Whenever payment of any such taxes shall be made by any person or persons within thirty days after date of said no-

given; and if the mode in which the authority is to be exercised is prescribed in the Act, that mode must be strictly pursued. Any departure in substance from the statute vitiates the proceedings. D'Antignac v. City Council of Augusta, 31 Ga. 700; Ansley v. Wilson, 50 Ga. 418; Frank v. City of Atlanta, 72 Ga. 432; 2 Dillon, Municipal Corp., 4 ed., §769, and notes." Bacon v. Mayor, 91 Ga. 503.

"The power of the State to collect taxes (according to his opinion)

704          SUPREME COURT OF GEORGIA.

D'Antignac vs. The City Council of Augusta.

tice, the amount charged against him or them on the digest shall be reduced three per cent.

Sec. 113. Is similar to Section 107, hereinbefore set forth.

Sec. 114. Is similar to Section 108, hereinbefore set forth.

Notwithstanding the stringent requisitions contained in said sections of the general ordinance of the city of Augusta, no taxes were ever demanded from the complainant during the years aforesaid, nor was he returned as a defaulter during either of those years; nor did any execution issue against Hill and his securities, for his failure to collect said taxes, due from the complainant to said city. The chairmen of the Committee on Finance, who were members of said city council, and whose especial duty it was to examine and report upon the books and accounts of the treasurer and collector, had been informed of the arrangement and contract between the said Hill and complainant, and had allowed the accounts of the said Hill to pass without objection on that account, and without requiring any demand to be made upon the complainant for his taxes, or any proceedings to be instituted for the collection of such taxes, as, by the ordinance of said city, they were required to do, if they deemed the complainant a defaulter. The said Hill was elected and re-elected to said office, during the years aforesaid, and was not removed by said city council, during said years, for any default or failure of his with reference to the taxes due to said city from the complainant. In view of all the foregoing facts, and of the course pursued by the said council towards the said Hill, and toward the complainant, and in view of the rigid accountability imposed by the said ordinance on the collector and treasurer, the complainant believed, and had a right to believe, that the city council were aware of the contract aforesaid between said Hill and the complainant, and that said council acquiesced in the same, and were willing to look to said Hill for the payment of the taxes due by complainant to said city, inasmuch as no proceedings were ever taken by the council, either against said Hill or complainant for a failure to collect or pay such taxes. Thus believing, the complainant rested easy, and took no steps to secure his claim against Hill, or obtain a receipt for his taxes, or to see that the books of the collector and treasurer showed that they were paid, as he might and would have done under other circumstances. But now,

is inherent and essential. A municipality has no such inherent power, but its power to collect taxes is dependent upon legislation, subject to the constitutional limitations as to uniformity, etc. Strict compliance with the law is required in order for municipalities to seize and sell for taxes. D'Antignac v. Augusta, 31 Ga. 700; Ansley v. Wilson, 50 Ga. 418, 422. There is no prohibition against judicial interference with the

at this late day, the complainant finds himself disappointed in his said reasonable belief and expectation, and, since the death of said Hill, is informed that there are no entries on his books showing any payment by him of the complainant's taxes, since the year 1849, and said city council has instructed and directed Edward Bustin, Esq., the present collector and treasurer of said city, to issue executions against the complainant for the same, which instructions the said Bustin has obeyed, by issuing against the complainant ten executions for his taxes for each of the years, 1850, 1851, 1852, 1853, 1854, 1855, 1856, 1857, 1858, and 1859, with ten per cent. damages for failing to pay the same at the time prescribed by the 111th section of the general ordinance of the city hereinbefore set forth. The aggregate sum of the taxes and damages for which said executions issued, amounts to more than twenty-six hundred dollars. Although the said executions purport to have been issued for the taxes due for the years to which they respectively relate, yet they were all issued on, and bear date, the 14th of February, 1860, and on the 21st day of the same month and year, said executions were levied by said Bustin, collector and treasurer, on a house and lot of the complainant, in the city of Augusta. The executions, with the levy entered thereon, are all annexed to the bill as exhibits. Bustin threatens to, and, as complainant alleges, will, proceed to sell said house and lot, unless arrested in his course by the interposition of a Court of Chancery. Inasmuch as the provisions of said city ordinance have not been pursued, nor their prescribed requisites complied with, by a demand of said taxes from complainant, and a return of him to the council as a defaulter, he alleges that the *fi. fas.* are proceeding against him contrary to good conscience and equity. Foster Blodget is now mayor of the city of Augusta, and a member of the city council, and has a knowledge, or belief founded on facts, which are material to the case made by the bill, and of the circumstances alleged therein, and complainant claims his answer under oath, as to the truth of the facts so alleged, and as to who are the agents, officers and members of said corporation, inasmuch as he has combined and confederated with the city council to injure the complainant in the premises.

Complainant prays by his bill that a *subpœna* issue, to

---

collection of municipal taxes. Vanover *v.* Davis, 27 Ga. (reaffirmed frequently since.)" Herrington *v.* Tolbert, 110 Ga. 531-2.

**TAXES IN ARREARS—RIGHT TO ISSUE EXECUTION THEREFOR.** "We hold that the **defendant in error, by refraining so long** [10 years] **from any attempt to enforce payment of these taxes,** or to place the tax-

compel the city council and Foster Blodget to answer the bill and discover the facts; also, that an injunction issue to restrain the collection of the tax *fi. fas.*, and that he have such other relief as his case calls for.

On the 7th of April, 1860, the injunction was granted, as prayed for by the bill.

The city council of Augusta filed their answer to the bill, in which they admit a belief that a business partnership existed between Hill and complainant, and that it terminated about the time stated in the bill, but as to how the accounts stood between them, or whether Hill owed complainant a large or any balance, they know nothing; that Hill was insolvent, and so continued to the time of his death; that he was elected collector and treasurer which yielded a profit and salary as stated; they know nothing of the agreement for Hill to pay complainant's taxes, as charged in the bill, or of his having in good faith paid such taxes up to 1849, in fulfilment of the agreement; they know nothing of the certificate of payment being furnished to complainant, nor of Hill's assurance that other certificates of payment should be given; all they know on that subject is: that up to 1850 complainant's taxes were paid, but how, by whom, and under what arrangement they were paid, the defendants do not know, as the fact that they were paid was the only matter that concerned them; the defendants admit that the ordinances of the city of Augusta are correctly set forth in the bill; they do not know whether Hill ever demanded from complainant the taxes he was due to the city of Augusta, and they do not believe that Hill ever reported or returned complainant as a defaulter; for if such had been done, the defendants would have proceeded to enforce the collection of the taxes. No proceedings were ever instituted against Hill and his securities, for his failure to pay or collect the taxes of complainant; the defendants admit that Foster Blodget and Benjamin Conley, who were chairmen of the Finance Committee of the city council, were told by Hill that he had agreed to pay complainant's taxes, but information of the fact was never communicated to the city council, nor did the council assent to, or acquiesce in, such agreement or arrangement; the defendants controvert complainant's right to assume or believe that they knew of the alleged arrangement between him and Hill, and that the city council acquiesced

payer in the predicament of a defaulter, **has lost this summary ex parte remedy against him, and must resort to suit at law or in equity** as in other cases between debtor and creditor." DuBignon *v.* Brunswick, 106 Ga. 322, 323, 324.

in such arrangement, and were looking to Hill instead of complainant for his city taxes; they insist, that if all the allegations in complainant's bill were true (but which they do not admit), it was his duty to see to it that Hill paid the taxes, as, by the alleged arrangement, Hill was but his agent, and if his own agent proved faithless to the trust reposed in him, it neither furnishes a cause of complaint against the defendant, or any good reason why complainant should be relieved from the payment of taxes which he owes the city, and which have never been paid; the defendants deny that no demand was made upon complainant for his taxes before said executions were issued, but aver that a demand was formally, and in strict compliance with said ordinance, made by the said Edward Bustin, collector and treasurer of said city, upon said complainant for said taxes, and that upon failure to pay the same, he was presented and returned by said Bustin, to said city council, as a defaulter; that upon said demand upon the complainant, his failure to pay the taxes, and his being returned as a defaulter, and not before, the proceedings against him were instituted and the *fi. fas.* issued; the defendants admit that the *fi. fas.* were issued, dated and levied at the time and in the manner set forth in the bill, and that the collection of the sums due in said *fi. fas.* would have been enforced but for the injunction issued in obedience to the prayer of the bill.

Foster Blodget also filed his answer to the bill, which is substantially the same as that of the city council, with the following additions, to wit: That he believes no execution was ever issued against complainant until after the death of Hill; that he is mayor of the city of Augusta, a citizen of said city, and a member of said corporation; that since Hill's death he has been informed by complainant, and believes it to be true, that Hill at some time did say to complainant, that he was growing so rich, that it would keep him [Hill] poor all his life to pay complainant's taxes; that in the summer of 1858, Hill did inform defendant, that when the partnership between him and complainant was dissolved, that he owed complainant a large amount of money which he had no means of paying, and that he had made an arrangement with complainant to pay his taxes for him; the defendant was chairman of the Committee on Finance at the time; the defendant also believes, from the information

of said Hill and Benjamin Conley, that Hill made the same statement to Conley, while he [Conley] was either mayor, or chairman of the Committee on Finance, but at what time, or under what circumstances, the defendant does not know; he does not know whether this information was ever given to any other member or officer of the council; he believes, that owing to this arrangement for Hill to pay complainant's taxes, the said Hill failed to demand the taxes from complainant, or to report him as a defaulter; and he also believes, that but for such arrangement, which he believed existed, that the said chairman of the Committee on Finance would have taken steps to enforce the liability of said Hill for said taxes, under the ordinance of said city.

Upon the coming in of the answers, counsel for the defendant's moved to dissolve the injunction, on the grounds:

1st. That there is no equity in the bill.

2d. That if there be any equity in the bill, the facts and circumstances upon which it is based, are fully denied by the answers of the defendants.

The presiding judge sustained this motion, and dissolved the injunction, and this decision is complained of as error.

EBENEZER STARNES, for the plaintiff in error.

JOHN K. JACKSON, for the defendants in error.

*By the Court.*—JENKINS, J., delivering the opinion.

We are not called upon in this case to pass upon the validity of the claim which defendants in error are seeking to enforce against plaintiff, nor do we intend so to do. It appears from the record, that defendants in error (being a municipal corporation, and authorized by their charter to assess against the inhabitants of the city of Augusta, taxes for the support of the municipal government) on the fourth day of February, 1860, caused ten executions to be issued by their clerk, against the plaintiff in error, each for the tax due by him for one year, and all covering the ten years from the year 1850 to the year 1859, inclusive. These executions were not issued from a Court of Record, to enforce a judgment obtained either at law or in equity, in a suit *inter partes*. They were issued by authority of the general

ordinance of the city council of Augusta, providing for the collection of taxes by a summary proceeding against defaulters. The proceeding thus authorized is *exparte* summary, and extraordinary, in so far as it departs from the course prescribed by the general law of the land for the collection of debts. The legality of the ordinance is not questioned; it has been treated as a statute, both in the pleadings and in the argument. These executions having been levied upon certain property of the defendant, he filed his bill in chancery, alleging that they had not been issued in conformity with the ordinance in question, and were, therefore, illegal; and praying that the plaintiff be restrained from proceeding further to enforce them. The injunction was granted, in the inception of this case, but was, upon the filing of the answer, on motion, dissolved—the Court below holding that they had been legally issued, and this judgment is assigned as error.

Our first inquiry is into the law of the case; and this is to be found in those sections of the general ordinance of city council of Augusta, which impose upon the inhabitants the duty of paying, and upon the collector and treasurer the duty of collecting taxes; and which define the status of a defaulting taxpayer, and authorize the issue of execution against him.

During the years from 1850 to 1856 (both included), the section governing this case was the 105th, and is in these words: "The collector and treasurer shall collect all taxes due to the city, unless the collection thereof is otherwise provided for.. It shall be the duty of the collector and treasurer to give notice in one or more of the gazettes of this city, *and to call at least once at the house of each person taxed, to demand the taxes, and unless such taxes be paid within three months from the date of said notice, it shall be his duty to make a return of such defaulters to the city council, and thereupon executions shall issue against the goods or person of such defaulters,* for the amount of his, her or their taxes, with the addition of ten per cent.," etc. The remaining portion of this section is omitted, because it is not pretended that it is applicable to this case.

In the year 1857, upon a revisal of the general ordinance, section 111 was made to supersede Section 105, above quoted; but those portions of both sections immediately appli-

cable to the question under consideration, are identical, with this exception, viz.: In framing the 111th section of the ordinance of 1857, the words—"and to call at least once at the house of each person taxed, to demand the taxes"—which are found in the 105th section of the pre-existing ordinance, are omitted, and for them the following words are substituted: "And all persons liable for city taxes, shall be required personally, or by agent, to pay the same at his office" [the office of the collector and treasurer].

A new rule was thus introduced, the difference being, that previous to 1857, it was the duty of the collector and treasurer to call upon the taxpayer and demand his taxes; whereas, in and after 1857, it was the duty of the taxpayer to call upon the collector and treasurer, and make payment without any other demand than the notice in the public gazette. In view of this change, the executions we are considering arrange themselves into two classes: 1st, those issued for taxes due prior to; and 2d, those issued for taxes due in and after 1857.

Such being the authority given the collector and treasurer of the city of Augusta in the premises, we next inquire what is the general or public law governing the exercise of this authority.

The following propositions may be regarded as law, settled by repeated adjudications of high authority:

1. That in *exparte* proceedings of this kind, under special authority, great strictness is required.

2. That in proceedings by statute authority, whereby a man may be deprived of his property, the statute "must be strictly pursued. Compliance with all its prerequisites must be shown.

*Ronkendorf vs. Taylor's Lessee,* 4 *Peter's Reports,* 359; *Williams vs. Peyton,* 4 *Wheaton's Reports,* 77; *Bloom vs. Burdick,* 1 *Hill's Reports,* 141, 142; *Thacher vs. Powel,* 6 *Wheaton,* 119; *Jesse vs. Preston,* 5 *Grattan,* 120; *Jackson vs. Shephard,* 7 *Cowen,* 90, 91.

In all of these cases the contest was between a purchaser at a public sale, professedly in pursuance and by authority of statute law, and the party whose property was thus sold or his representative or assigns. In all of them, save Bloom *vs.* Burdick, 1 Hill, the sale was for the collection of taxes in arrears.

They are, therefore, directly in point; and the rule of law recognized in each might, with propriety, if necessary, be more rigidly enforced in the case under consideration, for the reason that the parties here are the government assessing and seeking to collect taxes, and the inhabitant resisting their collection.

Applying, then, these rules of law to the ordinances in question, we proceed to inquire whether the tax executions against the plaintiff in error were legally issued?

By the letter of those ordinances, execution was authorized to be issued only against *defaulting* taxpayers. They require that payment shall be made to the collector and treasurer, but that execution, upon failure to pay, shall be issued by the clerk of council. To make this act of the clerk legal, there are three indispensable prerequisites: 1st, that the collector shall have made such call upon the taxpayer as the ordinance prescribes; 2d, that the taxpayer, after such call made, shall have failed within the time designated by the ordinance to pay; 3d, that the collector shall have reported the taxpayer thus failing, to the city council. Anterior to the year 1857, to make the call upon the taxpayer a full compliance with the ordinance, it was necessary that the collector publish notice in one or more of the gazettes of the city, and *"call at least once at the house of each person taxed, to demand the taxes,"* and to the first class of executions this provision is applicable. It is conceded that he did publish notice in a gazette of the city, but it does not appear that the collector and treasurer, in any one of the years from 1850 to 1856, inclusive, did "call at the house of the plaintiff in error to demand his taxes." The complainant in his bill alleges that he did not. The corporation, by attorney, say they have no certain knowledge whether or not he did. Mayor Blodget, answering upon his corporal oath, says he has no certain knowledge, but believes the collector did not make such call. This being a prerequisite, must appear affirmatively. *In Jackson vs. Shephard, supra,* this precise question was made and so determined. Here there was one prerequisite not complied with.

It is further conceded that the collector for those years did not, in any one of them, report the plaintiff in error to the city council, as a defaulter. This is another prerequi-

site not complied with. The taxpayer, then, not having been in either of those years in a predicament which made him, by the terms of the ordinance, liable to be reported as a defaulter, and not having been, in point of fact, so reported, the ordinance conferred no authority on the clerk to issue executions.

In regard to the second class of executions, those issued severally for the years 1857, 1858, 1859, the prerequisite of a call and demand at the house of the person taxed did not obtain. It had been dispensed with by an amendatory ordinance. But the amendatory ordinance, like the original, requires that he shall have been reported by the collector to the council, as a defaulter, and that *then* executions may be issued. It is conceded, that the plaintiff in error was not, in either of the three years last mentioned, so reported. For lack of this prerequisite, *alone,* we hold that the executions for the ·taxes of those three years were illegally issued.

It is insisted by the defendants in error, that these prerequisites of the ordinances in question were complied with, and the executions legally issued; and so the Court below held. This allegation of the defendants and ruling of the Court rest upon the averment in defendant's answer, that in · the year 1860, Hill, who filled the office of collector and treasurer during all the years wherein plaintiff in error is .alleged to have made default, having died, Edward Bustin, his successor, made demand of plaintiff personally, for the taxes of all those years; and upon his failing to pay, reported him to the city council as a defaulter, before the executions were issued.

To determine whether or not this was a compliance with · the prerequisites of those ordinances, we must look a little more closely into them to ascertain *when* the *demand* under the first, and *when* the report of default under both, must be made. The one hundred and fifth section (of force previously to 1857), after making it the duty of the collector and treasurer to publish notice, and to call and demand pay- · ment, proceeds in immediate connection, thus: "And unless said taxes be paid within two months from the date of said *notice,* it shall be his duty to make return of such defaulters," etc. It is his duty, in cases of default, to do three things, and in this order: To give *"notice,"* to make *"demand,"* to make *"return."* The taxpayer is entitled to

notice in the gazette, and to demand at his house, and he is allowed two months within which to pay, not after demand at his house, but after *"notice"* in the gazette.   He is entitled to "demand," *before* being placed in default, but he is required to pay within two months after notice in the gazette; therefore, the demand must be made within two months after notice in the gazette.

There need be no more distinct limitation of the time within which demand, as a prerequisite to the issue of execution, must be made.   No demand was made in any one of the years, anterior to 1857, upon the plaintiff in error, within such time and the after demand in 1860, was no compliance with the ordinance.

Regarding the time within which defaulters in any one year must be returned, there is little, if any, less certainty. Section 107 of the General Ordinance, existing anterior to 1857, and section 113 of the General Ordinance, as revised and amended in that year, are precisely the same, and, in connection with those sections already considered, furnish a rule for determining, with sufficient precision, the time within which defaulters must be returned.   They are in these words: "At the regular time for returning defaulters on the digest, the collector and treasurer shall become liable for the amount of the digest, after deducting the sum for which defaulters are returned, and he shall become liable for the amount of all executions issued at the expiration of the period in which, by regular course of law, they might have been satisfied, unless he show sufficient cause why satisfaction has not been obtained; and he shall be liable for the amount of all executions not satisfied, which may remain in his hands *at the expiration of his term of service,* unless he shall, *within ten days thereafter,* deliver them to the city council."

The first words of this ordinance, viz.: *"At the regular time for returning defaulters,"* settle conclusively one point in controversy, to wit: That there *is a regular time* for the making of this return, and it only remains to determine what that time is.   By section 105 of the old, and section 111 of the present ordinance, it is provided, that "unless said taxes be paid within two months from the date of said notice (in the gazette), it shall be his (the collector's) duty to make a return of such defaulters to the city council," etc.

714　　SUPREME COURT OF GEORGIA.

D'Antignac vs. The City Council of Augusta.

We think this enjoins the performance of the duty so soon after the expiration of the two months, as, in the regular course of things, it can be done. A reasonable construction would be, that defaulters for the current year should be returned to the council at their first regular meeting after the expiration of the two months, if sufficient time intervened; if not, then at the next succeeding meeting. But it is not necessary, *in this case,* to place so narrow a limit upon the time. There is a more liberal construction, to which, for the sake of the argument and greater certainty, we resort.

Returning to section 107 of the old—113 of the present ordinance above quoted—we find it provided, that "he (the collector) shall be liable for the amount of all executions not satisfied, which may remain in his hands *at the expiration of his term of service,* unless he shall within ten days *thereafter* (i. e., after the expiration of his term of service) deliver them to the city council." Now, the context shows that the executions here spoken of are such as may have been issued against taxpayers making default, during his term of service. They must (to save him from liability) be delivered within ten days after his term of service shall have expired. His term of service is one year (and until his successor shall be appointed and qualified, see Secs. 103 of the old and 109 of the present ordinance).

Clearly, then, the ordinance contemplates that execution shall issue against defaulters before the expiration of the term of office of the collector, within which the default was made; or, in other words, within the same fiscal year (of the corporation) in which default was made. But, by the ordinance, the issue of execution must be preceded by a return of the defaulter, *ergo* such return must be made before the expiration of the collector's term of office—before the expiration of the fiscal year within which default was made. By the first clause of the section we are now considering, the measure of the collector's liability is fixed. It is the amount of the tax digest, less the sums for which defaulters are returned. Will the city council, the defendants in error, say they intended, by the enactment of this ordinance, to leave themselves, or permit their collector to leave them, at the expiration of his term of service, without the data necessary to measure, to ascertain his liability? Scarcely, when,

by the next succeeding section (108 of the old and 114 of the present ordinance), they provide that executions shall issue against him and his securities for the amount of his liability, within ten days, unless he shall pay over such amount to his successor, or deposit it in bank. If they did not so intend, they intended that defaulters in any one year shall be returned before the expiration of the then collector's term of service. And so we must construe their ordinance.

This construction is strengthened by consideration of the nature of this corporation, and the object for which it assesses taxes. It is a corporation created for municipal government, and it is permitted to assess and collect taxes annually to defray the annual expenses of that government. It should assess no higher taxes than are necessary for that purpose; and keeping within this rule, there rests upon it both a duty and a necessity, to collect, within the year, the taxes assessed in and for that year.

If we have correctly construed this ordinance, and correctly stated the general law governing *ex parte* summary, statutory proceedings (of which this is one), shall it be said that after ten years of non-action, the defendant in error may cause a demand for taxes to be made, then a return of the taxpayer as a defaulter, then the issue of execution *ex parte* against him, whereby his property may be sold, and his title thereto divested, without a hearing—a day in Court allowed him? We think not. We hold that the defendant in error, by refraining so long from any attempt to enforce payment of these taxes, or to place the taxpayer in the predicament of a defaulter, has lost this summary *ex parte* remedy against him; and must resort to suit at law or in equity, as in other cases between debtor and creditor. The judgment of the Court below is therefore reversed.

## JUDGMENT. ·

Whereupon, it is adjudged by the Court, that the judgment of the Court below, dissolving the injunction, be reversed, and the injunction be reinstated, on the ground: That the tax executions exhibited with the bill were illegally issued, the prerequisites of the ordinance authorizing the issue of tax executions not having been complied with.