FRANK *vs.* THE CITY OF ATLANTA.

1. Had there been no disputed facts in this case, and had its determination depended solely upon questions of law, it should have been disposed of on a motion for a non-suit; but there being both questions of law and fact involved in the issues made, the grant of the non-suit was error.

(*a.*) Under a charter creating building inspectors, whose duty is to inspect all buildings and walls located on the various streets, lanes and alleys of the city, and giving power to the mayor and council to execute in a summary manner the recommendations of such inspectors, whether the mayor and general council had authority, upon the report of the inspectors and engineer to destroy a building which was reported unsafe, but which was located in the center of a block, and not on any street, lane or alley of said city; and whether, under a general power to extend protection to the citizens, the municipal authorities have authority to destroy such buildings? *Quære?*

(*b.*) Municipal corporations are confined to the exercise of powers expressly granted or necessarily implied, and a necessary implication must be so clear and strong as to render it highly improbable that the legislature could have entertained an intention contrary to such implication.

2. The taking or injuring of private property for the public benefit is the exercise of a high power, and all the conditions and limitations provided by law under which it may be done should be closely followed.

3. If the house was destroyed to abate a nuisance, the proceeding was not in accordance with the charter of the city of Atlanta (§67, acts 1874, p. 133), which conferred authority to cause such nuisances to be abated as are likely to endanger the health of the city or of any neighborhood only upon the report of the board of health, and in pursuance of its recommendation.

4. It was contested whether the city had established fire limits; and the plaintiff contended that the building had stood for seventeen years without complaint on that account; that there were other

buildings of like character within the same boundaries, and that even if it were located within these limits, it could not be removed until the owner had had five days' notice, which had not been given. These and the other facts in the case should have been left to the jury.

April 25, 1884

**Municipal Corporations. Non-suit. Eminent Domain. Nuisance. Before Judge HAMMOND. Fulton Superior Court. October Term, 1883.**

Jane Frank brought an action for damages against the city of Atlanta, alleging that she was the owner of a build ing situated in the center of a block in that city ; that on April 17, 1882, the mayor and general council passed the following resolution :

"WHEREAS, the board of health has adjudged the building in the rear of No. — Decatur street, owned by Mrs Jane Frank, a nuisance, and recommend that the same be removed; and, whereas, the same was erected in violation of the law prohibiting the erection of frame buildings in the fire limits:

*Resolved*, that the recommendation of the board of health be adopted, and that the proper authorities be instructed by his Honor, the mayor, to have the building torn down and removed at once."

That the city marshal ejected the tenants of plaintiff and nailed up the building, and subsequently tore it down and destroyed the materials, or rendered them worthless, and subsequently reported his action to the mayor and council, which report was received by them; that the board of health had not, in fact, made any such recommendation, and the building was not, in fact, erected in violation of law; that the resolutions were untrue, and so known to be by the mayor and council ; and that the real object was to injure and disturb plaintiff.

Defendant pleaded the general issue.

The evidence for the plaintiff was, in brief, as follows : She owned the building in dispute, it was used as a tenement house, and was located in the interior of a block, and about one hundred to one hundred and fifty feet from the

nearest streets; it was approached by a private alley or pass-way belonging to her, and running to the house from one of the surrounding streets. The house was built in 1865. It was a wooden building near the centre of the city, but there were other wooden structures as near in as that, and several of them built near the same time. Plaintiff testified that she did not know where the fire limits were; but that the city never made any objection to the building of the house because it was not fire-proof, or because it was in the fire limits, and never gave her any notice that they were going to move it on that account, nor of any intention to destroy the house as a nuisance. Some complaint was heard about her tenants, who were negroes. On January 2, 1882, at a meeting of council, the building inspectors reported that the building was in a dilapidated condition and the sills rotten, and recommended that it be taken down. On January 16, the council adopted the report, and ordered the building to be torn down. On February 6, counsel employed by plaintiff, or her agent, appeared at a meeting of the council, and was heard from on the subject of the jurisdiction of the building inspectors over this building, and the council instructed the marshal to suspend work until the next regular meeting. Nothing more was done for some time. Then a case of small-pox in the building was reported to the board of health by a person appointed to inspect by them. The building was testified, by a member of the board of health, to be a nuisance, after the small-pox developed there, but no report was made on it by the board, and the recital to that effect in the resolution was a mistake. On April 17, the resolution set out above was passed; the building was then torn down, and this action was reported by the marshal to the council, who received the report and ordered it filed. The value of the house was variously estimated at from $300.00 to $1,000.00.

On motion, the court granted a non-suit, and plaintiff excepted.

Under the charter of the city of Atlanta, the mayor and council have the power

"To elect three building inspectors, whose duty it shall be, in connection with the city engineer, to inspect all buildings and walls located on the various streets, lanes and alleys of said city, when they shall be requested so to do by the mayor, and report the result of said investigation to said mayor and general council, with a recommendation as to the best course to be pursued in reference to said buildings or walls for the protection of the citizens."

MARSHALL J. CLARKE, for plaintiff in error.

E. A. ANGIER ; W. T. NEWMAN, for defendant.

HALL, Justice.

1. Had there been no disputed facts in this case, and had its determination depended solely upon questions of law, then it should have been disposed of on a motion for a non-suit. *Frank vs. Atlanta Street Railroad Company*, decided to-day.

We think the non-suit wrong in the present instance, because both questions of law and fact were involved in the issues made.

Whether the mayor and general council of the city of Atlanta had authority, upon the report of its building inspectors and engineer, to destroy a building reported as unsafe, but which was not located on any street, alley or lane of the city, is, to say the least, questionable, under §145 of its charter, acts 1874, p. 147. It is urged that they have jurisdiction of this matter for the protection of the occupants of buildings thus situated under the general power and corresponding duty to extend "protection to the citizens." Sec. 93, City Code of 1879. There is no grant of any specific power to affect this object, that we are aware of, and whether the legislature intended to confer such authority by the general grant relied on, is not quite clear. An application to the general assembly for express power over this subject, and its action thereon,

would solve the doubt.   In the view we take of this case, it is not necessary to decide the question, and we do not rule upon it.   We should be reluctant to do so without a fuller argument than that with which we have been favored on this occasion.   Municipal corporations, like all others, are confined to the exercise of powers expressly granted, or necessarily implied, and a necessary implication must be so clear and strong as to render it highly improbable that the legislature could have entertained an intention contrary to the implication claimed as resulting from the power granted; indeed, some high authorities go so far as to declare that it must be impossible to impute a contrary intention to the law-making power.   Dillon on Mun. Corp., §§ 1, 680, notes and citations.   As applied to the point in controversy here, *Ib.*, §§683, 1013, notes; 12 La. Ann., 481; 39 *Ga.*, 725; 66 *Ib.*, 195.

2.  The taking or injuring of private property for the public benefit is the exercise of a high power, and all the conditions and limitations provided by law, under which it may be done, should be closely followed.   Too much caution in this respect cannot be observed to prevent abuse and oppression.   This court in *D'Antignac vs. The City Council of Augusta*, 31 *Ga.*, 700, 710, announced and enforced the principle, upon abundant authority, cited in the luminous opinion of Jenkins J., who pronounced the judgments, " that, in proceedings by statute authority, whereby a man may be deprived of his property, the statute must be strictly pursued.   Compliance with all its prerequisites must be shown." 67 *Id.*, 194, 195.   By §146 of the charter (Acts, 1874, p. 147), the party whose building is complained of is entitled to fifteen days' notice, that the objections reported by the building inspectors may be removed.   That this requirement of the act was complied with is disputed; the plaintiff contends that, while her counsel appeared before the mayor and general council, and insisted that her building was not so located as to fall under the jurisdiction of the building inspectors, that this

was not the notice required by the charter to be given to her to remove their objections; that, in consequence of this appearance, proceedings upon the report thus made were suspended, and, as she had good reason to believe, were abandoned : that, in tearing down her building, the city authorities did not, in fact, carry out the recommendation of the building inspectors, but acted under a resolution, which recited that the building had been reported by the board of health as a nuisance : this resolution appeared. upon their minutes but a short time before the edifice-was destroyed. She proved by members of the board of health that no such report as that recited in the resolution had ever been made; and further, that search had been made in the proper place, and the report could not be found.

3. If the house was destroyed to abate a nuisance, then it is very evident, from the uncontradicted testimony in the case, that the proceeding was not in accordance with the defendant's charter (§67, Acts 1874, p. 133), which conferred authority to act and cause such nuisances to be abated as are likely " to endanger the health of the city or of any neighborhood," only upon the report of the board of health, and in pursuance of its recommendation.

4. It was contended, however, if both these defences were unavailing, still this was a wooden structure, and was within the fire limits, and for that reason should be removed. But to this it was replied that there was no proof that the city had established fire limits; that the building had stood where it was for seventeen years, and no complaint had been made on that account; that there were other buildings of like character within the same boundaries that had not been disturbed; and even if it were located within these limits, it could not be removed until she had five days' notice, which it was not pretended had been given as required by §153 of the city charter. All these were facts, and there are others in this record. bearing upon the validity of the act in demolishing this house, and shedding light upon the motives and conduct

v 72-29

of the city's agents in the destruction of plaintiff's property, which she was entitled to have submitted to the jury that she might have them pass upon her right to recover compensation for the wrongs done to her property.

Judgment reversed.