21725, 21726. STATE HIGHWAY DEPARTMENT v.
HATCHER et al.; and vice versa.

ARGUED JULY 10, 1962—DECIDED SEPTEMBER 6, 1962—
REHEARING DENIED SEPTEMBER 18 AND OCTOBER 1, 1962.

*Eugene Cook, Attorney General, Carter Goode, E. J. Summerour, Assistant Attorneys General, George B. Culpepper III,* for plaintiff in error.

*Bloch, Hall, Groover & Hawkins, Ellsworth Hall, Jr.,* contra.

HEAD, Presiding Justice. The State Highway Department filed its petition and "declaration of taking" of described lands, under the authority of an act of the General Assembly approved April 5, 1961 (Ga. L. 1961, pp. 517-529; *Code Ann. Supp. Ch.* 36-13). Robert P. Hatcher and others were named as owners.

Hatcher filed a "special appearance" in which he attacked the validity of the 1961 act on a number of constitutional grounds. In a separate petition for injunction and other relief Hatcher alleged that: "(b) The aforesaid described Act of the General Assembly of Georgia is restricted to the acquisition and damaging of private property for 'State-Aid Roads' and is not applicable to taking and damaging of private property for the purposes contemplated in said pending proceedings, to wit, 'Federal, Limited Access, Interstate Highways'; (c) The aforesaid Act of the General Assembly of Georgia does not provide for and is not applicable to the taking and condemnation of petitioner's 'property rights' which consist of ingress, egress and travel to and from the proposed highway and petitioner's properties bordering upon and adjacent to either side of said highway; . . ."

300

The "special appearance" of the property owner and his petition for injunction were consolidated with the condemnation proceeding and considered as one proceeding by the trial judge. The judge overruled the general demurrers of the Highway Department to the petition for injunction, and the special demurrers to the allegations that the 1961 act is not applicable, and held that the "highway in question, being an Interstate Highway, is not a State-aid public road within the meaning of the said act of the General Assembly of Georgia, Ga. Laws 1961, pp. 517, et seq." The judge enjoined the Highway Department from proceeding with the condemnation of the property. The main bill of exceptions assigns error on this ruling. The cross-bill of exceptions assigns error on the order of the court sustaining the demurrers to the constitutional attacks made upon the 1961 act.

The act of 1961 (Ga. L. 1961, pp. 517-529), upon which the Highway Department relies in the present case, provides in the caption: "An Act to prescribe the procedure for the exercise of the power of eminent domain by the State of Georgia, or any division, department, or branch of the government of the State of Georgia, or any County of such State for *State-aid* public road purposes; etc." (Italics ours.) In Section 1 of the act the right of condemnation is limited to the power to "take or damage private property for State-aid public road purposes," and in section 3 of the act the acquisition of rights of way is limited to "State-aid public road purposes."

Chapter 95-17 of the Code creates and defines a system of State-aid roads. By § 95-1701 a system of State-aid roads is created for the purpose of interconnecting the several county seats, such State-aid roads to be designated, constructed, and maintained by the State through the State Highway Department. By § 95-1705 the State Highway Board is required to designate the system of interconnecting county seat public roads as State-aid roads, and by § 95-1706 two roads starting at the county seat are to be designated in each county, such roads to extend to the county line and connect with designated State-aid roads of any adjoining county or counties. By § 95-1707 it is provided that additional main traffic roads may be designated,

which are necessary to complete the interconnecting system, where there are unusual topographic conditions to be met, or to serve important market points. By § 95-1708 the State Highway Department is granted the right to resurvey and relocate in their entirety "all of said roads, keeping in view only the control points." Section 95-1709 provides that when any road is included in the system of State-aid roads, no county shall thereafter be required to levy taxes for the construction or maintenance of such road. The sections of the Code above referred to, other sections of Chapter 95-17, (and other statutory provisions, see especially Ga. L. 1951, pp. 31, 36; *Code Ann.* § 95-1610), make it clear that the system of State-aid roads includes only such roads as are designated, which roads must be interconnecting with the several county seats of this State.

In the brief of counsel for the Highway Department the question is presented as to whether the lower court was "authorized to hold that this proposed highway, being a 'Federal, Limited Access, Interstate Highway,' is not a 'State-aid highway' within the meaning of Georgia law." It was alleged in paragraph 2 of the petition that, "Said right of way is for a State-aid road, as defined by law, . . ." In paragraph 3 of the petition it is alleged that the lands sought to be condemned "are for State-aid public road purposes, being a part of a system of limited access highways authorized and established under the provisions of Chapter 95-17a of the Code, Georgia Laws 1955, pp. 559, et seq." The copy of the resolution of the State Highway Board describes the highway to be constructed as "Project No. I—75-1 (29) Valdosta to Macon Interstate."

There are many provisions in the act of 1955, pp. 559-564 (*Code Ann. Ch.* 95-17a) which eliminate any possible construction that a limited access highway is, or can fall within the classification of, a "State-aid" road as defined by Chapter 95-17 of the Code, and reference to any Federal act providing for the creation of a system of national interstate highways is unnecessary to demonstrate the character of the proposed road (but see *City of Carrollton v. Walker*, 215 Ga. 505, 511, 111 SE2d 79). The pleadings in the present case demanded the finding by the trial judge that the limited access interstate highway under con-

struction did not fall within the classification of a State-aid road as defined by Chapter 95-17 of the Code.

"The right of eminent domain is a sovereign right of the State. It is inherent in every sovereignty, and existed before constitutions were adopted. It lies dormant until the legislature sets it in motion. As the legislature can not in every case supervise the condemnation, it may confer the power upon agencies. . . The power thus conferred is always to be strictly construed, and will not be permitted to be exercised except where it is affirmatively granted." *Chestatee Pyrites Co. v. Cavenders Creek Gold Mining Co.*, 119 Ga. 354, 355 (46 SE 422, 100 ASR 174); *D'Antignac v. City Council of Augusta*, 31 Ga. 700; *Botts v. Southeastern Pipe-Line Co.*, 190 Ga. 689 (10 SE2d 375); *Marist Society v. City of Atlanta*, 212 Ga. 115, 118 (4) (90 SE2d 564).

In *Frank v. City of Atlanta*, 72 Ga. 428, 432 (2), it was held: "The taking or injuring of private property for the public benefit is the exercise of a high power, and all the conditions and limitations provided by law, under which it may be done, should be closely followed. Too much caution in this respect cannot be observed to prevent abuse and oppression." It is the general rule in this country that statutes conferring the power of eminent domain must be strictly construed, and clear legislative authority must be shown to authorize the taking. 18 Am. Jur. 650, Eminent Domain, § 26; 29 CJS 806, Eminent Domain, § 22; 1 Nichols on Eminent Domain, 3rd Ed., p. 229.

Under the 1961 act the condemnation of private property for public road purposes in the manner therein provided is affirmatively granted only where the land taken is to be used for a State-aid road. If the General Assembly had desired to extend the right and power to condemn under this act to all roads, it could have done so by omitting the limitation imposed by the words "State-aid" as applied to public roads. The legislative history of the 1961 act conclusively shows that the General Assembly knowingly and intentionally limited the 1961 act in its application to State-aid roads, in that as originally introduced the act was not so limited. This limitation to State-aid roads was imposed by committee substitute which was duly enacted. See Ga. House Journal, Regular Session 1961, pp. 982,

1017. The presumption that the 1961 act was enacted by the General Assembly with "full knowledge of the existing condition of the law," (*Botts v. Southeastern Pipe-Line Co.*, 190 Ga. 689, 701, supra) is fully sustained by the legislative history of the act.

This court will not undertake to grant a power withheld by the General Assembly, where the limitation on the power is specific, clear, and unambiguous. The property can not be taken in the present case for the construction of a "Federal, Limited-Access, Interstate Highway" under the act of 1961 (Ga. L. 1961, pp. 517-529, *Code Ann. Supp. Ch.* 36-13), and the trial judge properly so determined.

■ It is the established policy of this court that constitutional questions will not be ruled upon unless their determination is essential to protect some right of the complaining party. *Great Atlantic & Pacific Tea Co. v. City of Columbus*, 189 Ga. 458, 465 (6 SE2d 320); *Sumter County v. Allen*, 193 Ga. 171, 173 (17 SE2d 567); *Harper v. Davis*, 197 Ga. 762, 765 (30 SE2d 481).

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. All the Justices concur, except Duckworth, C. J., and Candler, J., who dissent.*

DUCKWORTH, Chief Justice, dissenting. I dissent from the judgment on the main bill for the reason that *Code Ann.* § 95-1704a (Ga. L. 1955, pp. 559, 562) authorizes highway authorities of the State, counties and municipalities to acquire private property for limited access facilities by condemnation "in the same manner as such governmental units are now or *may hereafter* be authorized by law to acquire such property or property rights in connection with highways and streets within their respective jurisdictions [italics mine]." The mere fact that Ga. L. 1961, p. 517, et seq., prescribes a procedure for the exercise of eminent domain for State-aid public road purposes in addition to other authority conferred does not prohibit such method from being used for limited access facilities under *Code Ann.* § 95-1704a, supra, which is not in conflict with the latter act, and the Highway Department may use the latter method to acquire rights of way for such limited access highways by this new method of condemnation thereunder.

Since no part of the majority opinion and judgment on the main bill has for consideration the constitutional questions raised in the cross-bill of exceptions this dissent in no way takes into consideration such questions and is only a dissent from the majority opinion as written and the judgment of affirmance determined therefrom.

I am authorized to state that Mr. Justice Candler concurs in this dissent.

## ON MOTION FOR REHEARING.

Counsel for the State Highway Department in their motion for rehearing quote from an act of the General Assembly approved March 7, 1955 (Ga. L. 1955, pp. 559-564), entitled, "Limited-Access Highways," a provision from § 3 wherein it is provided that any limited-access highway may be accepted as a part of the "State Highway System." Counsel then quote from § 5 of that act as follows: "The State Highway Department of Georgia and the highway authorities of the counties or municipalities in the State may acquire private or public property and property rights for limited-access facilities and service roads, including rights of access, air, view and light through gift, devise, purchase or condemnation in the same manner as such governmental units are now or may hereafter be authorized by law to acquire such property or property rights in connection with highways and streets within their respective jurisdictions." The argument is made that: ". . . it becomes clear that it was the purpose and intention of the State Highway Department and the State Highway Board to condemn the subject property for a limited access highway and which was to be a part of the State Aid Road System, and this they were authorized to do by the plain provisions of these Code sections [the sections referred to being from the act of 1955 as herein set forth]."

This argument fails to take into account the rule heretofore stated that the power to condemn will be strictly construed and will not be permitted except where affirmatively granted. Under the act of the General Assembly of 1961 (Ga. L. 1961, pp. 517-529), the authority to condemn in the manner therein provided was affirmatively granted only as to "State-aid" roads. "State-aid" roads are defined, as heretofore shown, by the law of this

State. Pursuant to the provisions of *Code Ann. Ch.* 95-16, and more particularly §§ 95-1609, 95-1611, 95-1615, 95-1616, from the act of 1951 (Ga. L. 1951, pp. 31-39) and Ga. L. 1960, pp. 1109-1110, there are many roads and bridges in the "State Highway System of Georgia" which do not come within the classification of a "State-aid" road as defined by the General Assembly.

"One legislature can not lawfully provide that whenever a subsequent legislature enacts a statute with reference to a given subject, such statute shall embrace certain specified provisions. It can not tie the hands of its successors, or impose upon them conditions, with reference to subjects upon which they have equal power to legislate." *Walker v. McNelly,* 121 Ga. 114, 120 (48 SE 718). See also *Hamrick v. Rouse,* 17 Ga. 56, 60; *Daly v. Harris,* 33 Ga. Supp. 38, 50; *State v. Georgia R. & Bkg. Co.,* 54 Ga. 423, 426; *Pierce v. Powell,* 188 Ga. 481, 484 (4 SE2d 192); *State Ports Authority v. Arnall,* 201 Ga. 713, 728 (41 SE2d 246).

It is significant that the act of 1961 is the only one of a number of acts (*Code Chs.* 36-2, 36-11; Ga. L. 1957, pp. 387-397, *Code Ann. Supp. Ch.* 36-6a) conferring upon the State Highway Department the power to condemn for road purposes that limits the power to condemn to a particular type of road. It is further significant that the 1961 act as introduced in the General Assembly was without limitation as to what roads it would apply, and that the limitation to "State-aid" roads was imposed by committee substitute, as heretofore shown in our opinion. The limitation imposed by the act of 1961 to "State-aid" roads is a limitation within the legislative powers of the General Assembly, and one which this court is without authority to vacate or set aside.