## SANDERS *vs.* THE TOWN COMMISSIONERS OF BUTLER.

1. The Act of 1809, "to regulate the rates of tavern licenses in this State, has relation only to the prices of licenses, and leaves the power of granting licenses just where it had before been placed, or might thereafter be placed, by law."
2. The Courts will not infer that the Legislature intends to authorize a local departure from a general policy of the State, unless the local exception is expressed in specific terms.

*Certiorari*, in Taylor Superior Court.    Decided by Judge WORRILL, at October Term, 1859.

Sanders was brought before the Commissioners of the town of Butler on the charge of retailing spirituous liquors in said town without having obtained a license from said commissioners in violation of an ordinance passed by them.    After hearing evidence, the commissioners fined him $60 00.    He excepted to the judgment and sued out a *certiorari*, in which he alleges that neither the Act incorporating the town of Butler, nor any other Act of the Legislature, gave said commissioners power to regulate the retail of spirituous liquors in said town, and that the ordinance, therefore, passed on the subject by them is void.    The answer of the commissioners admitted that they had assessed the fine as stated, and contended that their ordinance was authorized by the town charter, and valid.

The Court below sustained the validity of the ordinance

and affirmed the judgment of the commissioners, and counsel for Sanders now assign that decision as error.

JAMES T. MAY, for plaintiff in error.

W. S. WALLACE and W. P. EDWARDS, *contra.*

*By the Court.*—STEPHENS, J., delivering the opinion.

1. Sanders had a retail license from the Inferior Court, but the town commissioners fined him for retailing without a license from *them.* The case presents a conflict between the Inferior Court and the town of Butler, as to which of the two has the legal power of granting licenses to retail within the town. The power is claimed for the town—first, under the Act of 1809, *Cobb's Dig.*, 1038, which, it is argued, confers the power upon *all* incorporated towns. That part of the Act which is claimed as having this effect, is a mere proviso to the first section. That section fixes the price of a license at five dollars, and then the proviso to it declares that nothing in the Act "shall be construed to control the *rates* which now are, or may be, established by the corporations of Savannah and Augusta, or any other incorporated town in this State." This Act, including the proviso, has relation, not to the power of granting licenses, but only to the rates or *prices* of licenses. Before the passage of this Act, the general law for the State was, that licenses were to be granted by the Inferior Courts of their respective counties, *without price;* while the local law for Savannah and Augusta, and perhaps for some other incorporated towns, was, that licenses were to be granted by those towns for their own localities, at *such prices* as each one might fix for itself. Then came the Act of 1809, providing a general *price* for licenses, and (lest that general price might be construed into a universal one,) guarding against that consequence by leaving untouched those local prices which had been already established, not by "any incorporated" town which might have *usurped*, or might thereafter usurp, the power to establish prices, but by "any incorporated town" which had been or might be authorized *to* establish such prices—the whole scope of the Act being to provide a general

rule for prices, without interfering with the *system* of local town rates, so far as that system had been, or might be, established *by law*. Such is the clear spirit and intent of the Act. But even the letter of it utterly fails to justify the conclusion which is sought to be drawn from it, that it invests " any incorporated town with the power of *granting* licenses. The utmost inference justified by even its letter is, that it conferred upon " any incorporated town ;" that is to say, upon *every* incorporated town, the power to regulate the *prices* of licenses, without the slightest change in the *sources* from which licenses must emanate. The power to regulate the prices of licenses is one thing, and the power to grant licenses is another thing ; and the one cannot be claimed as a necessary incident to the other, and especially the greater power of granting the license cannot be involved as an incident to the lesser one of regulating its price. There is no necessity that the two should go together, and this very Act separates them in the general rule for the State, the Legislature itself fixing the price, and leaving the Inferior Court to grant the license. There are several subsequent legislative interpretations of this Act in conformity with the construction we have given it. First, there are divers subsequent charters conferring the power to grant licenses upon particular incorporated towns, clearly implying that there was no general law conferring it upon *all* incorporated towns. Next, there is the Penal Code of 1833, punishing retailing without a license from the Inferior Court, " *except* in corporate towns or cities, where, by law, authority to grant licenses is vested in the corporate authorities of *such* towns or cities." The language of this exception is not "except in corporate towns and cities," leaving the exception to extend to *all* corporate towns and cities, but the exception is confined to *such* corporate towns and cities where, by law, the authority to grant licenses is vested, clearly implying that there are *other* corporate towns and cities where the authority is *not* vested. This same form of expression is preserved, and the same inference is to be drawn from it in the Act of 1854, modifying the terms of the Penal Code of 1833. So much for the *construction* of the Act of 1809. But if our construction is wrong, and the Act was intended to confer the power of granting licenses upon all incorporated towns, then so much of it as expresses that intention is *void* by the Constitution,

because it is a clear departure from the *title* of the Act, its title being simply "An Act to regulate the *rates* of Tavern Licenses in this State." It is not an Act to regulate licenses generally, including all things pertaining to them, but to regulate only *one* thing pertaining to them, and that is their *prices.* Anything in the body of the Act conferring a power to grant licenses, is "matter different from what is expressed in the title thereof," and is therefore void by the Constitution.

2. The power to grant licenses is claimed for the town, in the next and last place, from its charter. It is claimed, not under any clause conferring it in terms; but under a clause which confers upon the town a power of general legislation for itself. This power of legislation must be exercised in subordination to the Constitution and general laws of the State. We will not infer that the Legislature intends to authorize any local departure from a general policy of the State, unless the local exception is expressed in specific terms.

Judgment reversed.