CRANSTON *vs.* THE MAYOR, ETC., OF AUGUSTA.

The power of a municipal corporation to exercise police jurisdiction is a power delegated by the state. Hence, the corporation as a party to a criminal proceeding stands in place of the state. The state cannot have a writ of *certiorari* or a writ of error to revise a judgment of discharge by its courts. 7 *Ga.*, 422; 25 *Ib.*, 311. It follows, that a corporation cannot have a writ of *certiorari* to revise a similar judgment rendered by the corporation court on final trial of the accused.

Criminal law. Practice in the Supreme Court. Corporations. *Certiorari*. Before Judge GIBSON. Richmond Superior Court. October Term, 1877.

The facts are stated in the opinion.

H. CLAY FOSTER ; SALEM DUTCHER, for plaintiff in error.

J. C. C. BLACK, for defendant.

BLECKLEY, Justice.

This was a dog case.   On the fourteenth of August, 1877, plaintiff in error was tried in the recorder's court of the city of Augusta, upon a charge of violating the following ordinance of that city, passed July 20th, 1877, to-wit:

"An Ordinance to amend chapter 2d of the City Code in reference to dogs.

"SECTION I. *Be it ordained by the City Council of Augusta, and it is hereby ordained by the authority of the same,* That from and after the passage of this ordinance, the words 'two dollars and fifty cents,' in the fifth line of section first of said ordinance, be stricken therefrom, and in lieu thereof the words *one dollar* be inserted.

"SECTION II. *Be it further ordained by the authority aforesaid,* That every person owning or keeping any dog or dogs within the corporate limits of said city, is hereby required annually to purchase a collar or other badge for each of said dogs, and upon so doing shall be authorized to keep said dog or dogs for one year from the first of July of the year in which said collar was purchased.   Any person failing or refusing to comply with the foregoing shall, upon conviction before the recorder, be fined in a sum not less than one dollar, nor more than five dollars, for every day such dog is kept after the passage of this ordinance in the present year, and the first day of July in each year thereafter, and any dog found running at large in said city without such collar may, at any time during the year, be caught, impounded for twenty-four hours, and after the expiration of that time, in default of the payment of said fine and the purchase of a collar, said dog may be killed, or otherwise disposed of, as may be ordered by the police committee.

"SECTION III. *Be it further ordained,* That so much of all ordinances and parts of ordinances in conflict with this ordinance be and the same are hereby repealed."

Chapter 2d of the City Code of Augusta, of which the foregoing ordinance is amendatory, so far as said chapter is in reference to dogs, is as follows, to-wit:

"1. The chief of police shall provide a sufficient number of metal collars, to be marked 'C. A.,' and numbered from one upwards, and shall furnish the owner or owners of any dog or dogs, who may apply for the same, with collars, to be worn by all dogs, upon payment of the sum of two dollars and fifty cents, each, which shall protect such dogs as may wear the same from being killed, except during an alarm of hydrophobia in the city, or in the event or any dog wearing such collar being dangerous to the life or safety of any person.

"2. All dogs found running at large in the city of Augusta, except such as may wear such a collar as is provided for in the first section of

this chapter, shall be caught and impounded for twenty-four hours, during which time any person may redeem his or her dog, by the payment of one dollar fine to the chief of police, or other police officer, and the purchase of a collar, otherwise said dogs shall be killed or disposed of in such way as may be ordered by the police committee."

On the trial the following evidence was adduced on behalf of the city council in support of the charge made against plaintiff in error, to-wit:

E. J. Hicks, sworn: I was down at Mr. Cranston's, the defendant. He had a dog there; I called the second time the same day: one of the dogs was there; his residence is on Broad street, near Lincoln street, in this city; he told me he had another dog at Mr. Damish's, and told me to put it down to him; it was in this city, about the 10th of the present month; Mr. Cranston told me he had no collar. I was inspecting lots, and was told to take down the number of dogs on the lots; when I found this dog I took it down, and called again to see Mr. Cranston; he told me the dogs were his, and that he had not purchased a collar; I am a policeman.

*Cross-examined*—I was on a regular inspecting tour; was only told to take down the number of dogs while inspecting lots; I saw only one dog, a setter, in this yard; the one at Damish's was a setter also; it was in the yard, not running at large, only in the lot; have always seen it in the yard; don't know that I ever knew a case of hydrophobia here; have resided here since the war; have heard rumors of cases, but cannot say if they were true.

The city council offered no other evidence and the plaintiff in error offered none. After argument had, the recorder decided as follows:

"There is no doubt that the city has the right to impose special taxes and collect them by execution. But it has been decided that dogs are property, and the city has no more right to fine a citizen for not paying tax on his dog than on his horse. To say that a man can be brought up here, and fined or sent to jail because he doesn't pay his dog tax is absurd. The city may take the dog and choke it to

death, or dispose of it in any way it sees fit when found running at large, but it cannot punish the owner by a criminal proceeding. The case is dismissed."

Thereupon plaintiff in error was discharged.

On the sixteenth day of August, 1877, the city council presented its petition for *certiorari* to Hon. Wm. Gibson, judge of Richmond superior court, setting out in the petition the ordinance, chapter, charge, evidence, and decision above stated, and excepting to said decision as error on the following grounds, to-wit:

1. In deciding that said ordinance imposed a tax.

2. In deciding that said defendant could not be fined under said ordinance.

3. In deciding that said defendant could not be punished as provided in said ordinance.

4. In dismissing said case.

The petition further set out "that there having been no conviction in said case, no costs have accrued therein;" and was accompanied by the following certificate from the recorder, to wit:

"I, Mathew Sheron, recorder of the city of Augusta, hereby certify that no costs have accrued in the foregoing stated case, there having been no conviction.

" MATHEW SHERON, *City Recorder.*"

Said petition was verified by John M. Meyer, mayor of the city of Augusta, and on the 17th of August, 1877, there was indorsed thereon the sanction of Judge Gibson, whereupon the writ issued. Notice was given, and return made, all in due form, and the cause stood regularly for a hearing to the October term, 1877, of Richmond superior court.

On the 19th day of November, 1877, the *certiorari* was argued before Judge Gibson, and after argument had was sustained in the following decision, to-wit:

"In all governments, federal, state, or municipal, organized and created by the people, when a free and clear expression of their will through their selected representatives is made, it is the duty of the judiciary to enforce that will unless

violative of some fundamental principle of that government, and to authorize courts to disregard it, the violation should be plain and palpable. I am a friend to good dogs, and believe their creation not accidental but designed ; yet many· useless curs may prove a curse, and if, as counsel states, we have now in Augusta 5,000, I fear in this time of great scarcity of breadstuffs we are overstocked, and think that a sound public policy may require their diminution, and therefore sustain this *certiorari,* and order the court below to enter judgment for the fine imposed by the ordinance of council.        (Signed)          WM. GIBSON,
        *Judge Superior Court."*

Plaintiff in error excepted and excepts to the order granting, and to the order sustaining, the *certiorari,* and says the superior court erred :

1. In ordering said writ of *certiorari* to issue, it appearing by the petition of said city council therefor, that said defendant had in said recorder's court been put in jeopardy of his liberty upon the charge hereinbefore set out, and had upon trial of said charge been fully discharged and acquitted of the said offense alleged against him.

2. In contravening the eighth section of the first article of the constitution of said state, by not denying said petition for said *certiorari.*

3. In ordering said recorder's court to enter judgment against said defendant for the fine imposed by said municipal legislation for the offense charged against said defendant as aforesaid, it appearing to the said superior court by the return of the said recorder's court to said *certiorari,* that the cause certified was a criminal proceeding, and that said defendant had in said recorder's court been fully discharged and acquitted of said fine and said offense.

4. In sustaining said *certiorari.*

5. In deciding that said municipal legislation did not contravene so much of the first section of the first article of the constitution of said state as provides that protection to property is the paramount duty of government, and shall be impartial and complete.

6. In deciding that said municipal legislation was warranted by the charter of said city council.

7. In deciding that said municipal legislation was not in conflict with so much of the twenty-seventh section of the first article of the constitution of said state, as provides that taxation on property shall be *ad valorem* only, and uniform on all species of property taxed.

8. In deciding that said municipal legislation was not in conflict with so much of section sixteen of article first of the constitution of said state, as provides that excessive fines shall not be imposed, nor cruel and unusual punishments inflicted.

9. In deciding that a citizen of said city has no right to have or keep in said city a dog upon his own premises except upon compliance with such terms as said city council may see fit to impose.

10. In sustaining the constitutionality of said municipal legislation.

In the argument before the supreme court counsel for the plaintiff in error cited charter of Augusta; acts of 1874, p. 205; 50 *Ga.*, 394; 36 *Ib.*, 460; Code, §§4393, 4394, 4402; constitution of 1868, art. 1, §§1, 8; Code, §§4292, 4646, 2965, 2964, 301, 303, 317; 25 *Ga.*, 311; 7 *Ib.*, 422; 12 *Ib.*, 404, (5); 29 *Ib.*, 56; Cooley's C. L., 200, *n;* 41 *Ga.*, 21; 1 Reeves His. C. L., 292; 2 *Ib.*, 21; Crabb's Hist., 152; 2 Bl. Com., 416; 38 *Ga.*, 542; Code of Augusta, chap. 46, §8, p. 115; 51 *Ga.*, 639; 1 Chit. Pr., 14; Bouvier's Dic., "offense," "crime"; 1 Bish. Cr. L., 366; 30 *Ga.*, 679, 682; 1 Cush. 49; 3 Pick., 462; 5 Cowen, 462; 2 Cent. L. J., 563; 12 John., 433; Cooley's C. L., 198, 203, 572 *et seq.*, 595, 201. And counsel for the city cited 16 *Ga.*, 172; 36 *Ib.*, 460; 4 *Ib.*, 509; 14 *Ib.*, 356; 42 *Ib.*, 598; 50 *Ib.*, 537; Code of Augusta, 4; Mar. & Craw. Dig., 136; 5 *Ga.*, 546, 566; 53 *Ib.*, 615; 38 *Ib.*, 546; Cooley's C. L., 211, *note;* 18 Grat., 517; 10 *Ga.*, 534; 53 *Ib.*, 594; Cooley's C. L., 595; 42 N. H., 1, 373; 16 Wis., 317, 589; 27 Ind., 62; 100 Mass., 136; 1 Am. R., 94; 31 Conn., 127; 97 Mass., 221; Dillon M.

C., 272; 4 *Ga.*, 514; 22 *Ib.*, 98; acts of 1856, p. 215. Of these numerous authorities, we have occasion to apply at present only two; but as dogs have not had their exact legal relations adjusted in this state, and as they and their owners are destined, perhaps, to a career of trouble for some years to come, we have thought proper to transcribe all the citations of the learned counsel on both sides, for the benefit hereafter of whom it may concern.

The accused was put on his final trial before the appropriate municipal tribunal, and was duly tried and discharged. He was acquitted; and it is not alleged that his acquittal was the result of any fraud practiced by him or by the recorder. The police powers of Augusta have been delegated to it by the state. If the state chose to do it, she might resume them, and exercise them directly through her ordinary tribunals. Instead of empowering the city of Augusta to pass ordinances, she might pass statutes with like provisions, and administer them in the superior court of Richmond county, or in the county court. If the Augusta dogs can be collared by ordinance they could be collared by statute; and if their owners can be fined for non-compliance with the ordinance, they could be fined for non-compliance with the statute. To be fined, they would, in either case, have to be tried and pronounced guilty. It is clear that were the ordinances turned into statutes, and a trial had in the superior court, on a prosecution for not collaring a dog, an acquittal would be an end of the case. No writ of error in favor of the state would lie to this court, whatever errors of law might have been committed in favor of the prisoner. 7 *Ga.*, 422. If the trial were had in the county court with a like result, it is equally clear that no writ of *certiorari* would lie, at the state's instance, to the superior court. 25 *Ga.*, 311. In neither of the supposed cases would the state have any means of reversing the acquittal. Code, §§301, 4251. In municipal government, no less than in more general government, it is the power of the state that acts upon the citizen. The state will not herself, in her own direct prosecutions, harass

the citizen after acquittal; and certainly she has not expressly empowered the city of Augusta to do so, in municipal prosecutions.    We can see no reason for holding that the power ought to be, or can be implied.    As the law now stands, the city, like the state, must acquiesce in judgments of discharge rendered on final trial in police or criminal proceedings. Let the *certiorari* be dismissed.

Judgment reversed.