## WALKER *et al. v.* McNELLY, relator, *et al.*

1. The illegal sale of intoxicating liquors may be abated as a public nuisance, by a court of equity, upon information filed in behalf of the public by the solicitor-general of the judicial circuit wherein such sale is carried on.
2. The power of a municipal corporation to grant license for the sale of spirituous, vinous, or malt liquors within its incorporate limits must be derived from its charter ; and unless such power is therein clearly conferred, it does not exist.
3. Nothing contained in the original charter of the town of Mineral Bluff, or in the amendatory act of December 18, 1901, providing for the establishment and maintenance of a system of public schools in such town, confers upon its municipal authorities power to grant such license.
4. A municipal corporation created under a special act of the legislature, since the passage of the act of August 26, 1872, providing a general charter for towns and villages thereafter incorporated by the superior courts, has only the powers conferred upon it by the act granting its charter and acts amendatory thereof, and derives no power from the provisions contained in the above-mentioned act of 1872.

Argued October 3, — Decided October 17, 1904.

Injunction.     Before Judge Gober.     Fannin    superior    court. August 6, 1904.

*Thomas A. Brown, DuPree & Dobbs,* and *Slaton & Phillips,* for plaintiffs in error.    *B. F. Simpson, solicitor-general, William Butt,* and *H. B. Moss,* contra.

FISH, P. J. The solicitor-general of the Blue Ridge circuit, under and by virtue of his office, on information of McNelly as relator, in behalf of the people living in and near the town of Mineral Bluff, in Fannin county, brought a petition against Walker, Hart, and Logan, to enjoin them from conducting a barroom, or place for the sale of intoxicating liquors, in such town, and within three miles of Mineral Bluff Academy, located in the town. The petition alleged, that the sale of intoxicating liquors within a radius of three miles of such academy was prohibited by law ; that under the charter of the town, the municipal authorities thereof had no authority to regulate the sale of intoxicating

liquors therein; that the defendants and each of them were running a retail liquor saloon in the town and within less than three miles of the academy, in open violation of law, and that this saloon was, for various reasons alleged, a public nuisance. Upon the hearing, from the evidence for the defendants, it appeared that Walker was the proprietor of the saloon or barroom, and the other defendants were salesmen employed therein, and defendants' counsel admitted, in open court, that the defendants had no license or authority from any one to operate the barroom, except a license from the mayor and council of the town of Mineral Bluff. There was evidence, pro and con, as to the effects produced by the sale of intoxicating liquors by the defendants upon the morals, peace, good order, etc., of the community. The judge granted the injunction prayed for, and the defendants excepted.

1. The main and controlling question involved in the case is, whether the sale of spirituous and intoxicating liquors in the town of Mineral Bluff by the defendants, under a license issued by the mayor and city council thereof, was illegal. If it was in violation of law, then, under the evidence submitted, the court was authorized to find the barroom or saloon a public nuisance, which a court of equity, in a case of this character, would abate by injunction. *Lofton* v. *Collins*, 117 *Ga.* 434. In the case cited it was held: "The illegal sale of intoxicating liquors is a public nuisance, affecting the whole community in which the sale is carried on, and may be abated by process in the name of the State." In that case, as in this, it was contended that if the sale of intoxicating liquors complained of was illegal, the persons engaged in selling the same could be punished under the penal law, and that equity will not restrain the commission of a crime; but it was held that as the unlawful selling of such liquors was a public nuisance, injuring the entire community, a court of equity would abate it, upon information filed by the solicitor-general of the circuit in which the sale was carried on.

2. In the view which we take of the case, it is not necessary for us to decide whether the act of the legislature approved August 28, 1889 (Acts 1889, p. 1340), which declares that "it shall not be lawful for any person or persons to sell spirituous, malt, or intoxicating liquors within a radius of three miles of Mineral Bluff Academy, in the town of Mineral Bluff, in Fannin

county, Georgia," is or is not unconstitutional. This question was presented to the court below and has been argued here, but the judgment of the court below can and should be upheld irrespective of its determination.    Unless the legislature has conferred upon municipal authorities the power to grant license to sell spirituous or intoxicating liquors, no such power can be lawfully exercised by them, and license to sell such liquors must be procured from the ordinary, or county commissioners, of the county wherein such liquors are to be sold.    Pol. Code, §§ 1519, 1538; *Sanders* v. *Town Commissioners of Butler*, 30 *Ga.* 679; *Ordinary* v. *Retailers*, 42 *Ga.* 325.    In the case last cited it was held that the power conferred upon the municipal authorities of the city of Milledgeville to pass "such ordinances as are essential to the welfare and security of the city, and the preservation of the good order and peace of the same," was not sufficient to authorize them to grant license for retailing spirituous liquors within the corporate limits of the city.    Warner, J., said: "From the statement of facts disclosed by the record in this case, the City of Milledgeville has no express authority conferred by its charter to grant licenses for retailing spirituous liquors within the corporate limits thereof.    Until such power shall be expressly conferred on the city authorities to grant such license, the ordinary of the county, under the general law of the State, has the power and authority to grant the same:    Code, 1432, 1435.    *Sanders* vs. *The Commissioners of Butler*, 30th *Georgia Reports*, 679."    A comparison of the sections of the Code of 1868, cited by the learned judge, with sections 1519 and 1538 of our present Political Code will show that the principle ruled in that case is controlling in the present one, unless the legislature has conferred upon the municipal authorities of the Town of Mineral Bluff authority to grant license to sell spirituous, vinous, or malt liquors within its incorporate limits.    When that case was decided, under the general law of the State the authority and discretion to issue license to sell spirituous liquors within the limits of a given county existed only in the ordinary of such county.    An exception to this general law existed when the legislature had conferred the power to issue license for the sale of such liquors within the incorporate limits of a particular town or city upon its municipal authorities.    By reference to the above-cited sections of our Political Code, it will

be seen that, under the general law of the State, the authority and discretion to grant license to sell spirituous, vinous, or malt liquors, in counties where such sale is not prohibited by law, exists in the ordinaries of such counties, except in those counties where the jurisdiction of the ordinary over county matters has been conferred upon a board of county commissioners, when it exists in such board. Hence, under the principle laid down in the cases cited, no town or city has authority to grant license for the sale of such liquors within its incorporate limits, unless it is specially authorized to do so by its charter.

3. There is nothing in the act incorporating the Town of Mineral Bluff which confers upon its municipal authorities the power to license the sale of spirituous, malt, or vinous liquors within its incorporate limits. See Acts 1889, p. 836. Counsel for the plaintiffs in error do not insist that there is, but they insist that such power is impliedly conferred upon the mayor and council of Mineral Bluff by the act of December 18, 1901 (Acts 1901, p. 552), the purpose of which act was to provide for the establishment and maintenance of a system of public schools in the town. This contention is founded upon section 21 of the act, which provides, "That all the net proceeds arising from issuing license to retail spirituous liquors within the town of Mineral Bluff shall constitute a part of the public school fund of said town, and as such shall be by the mayor and council of said town turned over to the Mineral Bluff board of public education, to be used for said purpose, as in this act provided." This section certainly does not confer upon the mayor and council any express authority to grant license for the sale of spirituous liquors within the town; nor does such authority arise by necessary implication. The act does not undertake to deal with the power to license at all; but simply provides for the disposition of the net proceeds of license fees, in the event that licenses for the sale of spirituous liquors, within the limits of the town, shall be lawfully issued in the future. It contemplates that the time may come when licenses for the sale of such liquors will be lawfully issued, and provides how the net proceeds of the license fees shall then be disposed of. This is indicated in the title of the act, by the words, "to authorize and empower the mayor and council of Mineral Bluff to appropriate the proceeds from the grant of

license to retail spirituous liquors in said town (if there be such) to said public school purposes." The rule of strict construction obtains with reference to municipal charters; and powers which are not expressly, or by necessary implication, conferred upon a municipal corporation can not be exercised by it. In his valuable work on Municipal Corporations, Judge Dillon says: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: First, those granted in *express words*; second, those *necessarily or fairly* implied in or *incident* to powers expressly granted; third, those *essential* to the declared objects and purposes of the corporation,— not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied." 1 Dill. Munic. Corp. (4th ed.) § 89. Another eminent author says: "The grant of a license may be made by the State directly, or it may be made indirectly through one of the municipal corporations of the State. Of the indirect grant it is to be observed that a municipal corporation as such has no inherent power to grant licenses or exact license fees; it must derive all its authority in this regard from the State, and the power must come by direct grant and can not be taken by implication." 2 Cooley on Taxation (3d ed.), 1138. The same learned author, in his work on Constitutional Limitations, says that "the general disposition of the courts in this country has been to confine municipalities within the limits that a strict construction of the grants of power in their charters will assign to them; thus applying substantially the same rule that is applied to charters of private incorporation. The reasonable presumption is that the State has granted in clear and unmistakable terms all it has designed to grant at all." Cooley's Const. Lim. (7th ed.) pp. 271–272. This general rule of strict construction in reference to municipal charters was recognized in *Frederick* v. *City Council of Augusta*, 5 *Ga.* 561, 567, and enforced in *Augusta R. Co.* v. *City Council of Augusta*, 100 *Ga.* 701, and *Loftin* v. *Collins*, supra. In addition to this, we have seen that in *Ordinary* v. *Retailers*, supra, it was held that unless power to grant licenses for the retail of spirituous liquors within the incorporate limits of a town or city has been expressly conferred upon its

municipal authorities, the general law of the State in reference to the granting of such licenses prevails, and the proper county authority alone can issue them.

4. Another contention of the plaintiffs in error is, that the Town of Mineral Bluff had authority to grant the license in question, under the Political Code, §§ 702, 684. These sections are parts of the law for the incorporation of towns and villages by the superior courts. Section 702 provides that towns and villages so incorporated shall have the power to license and regulate the management of barrooms. Section 684 reads as follows: "The towns and villages heretofore established in this State shall remain subject to the laws now in force, applicable thereto respectively; and the provisions hereinafter set forth shall be deemed applicable only to towns and villages established after August 26th, 1872." The contention is, that the latter clause of this section makes all the provisions of the general charter provided for towns and villages incorporated by the superior courts applicable to every municipal corporation created since August 26, 1872, whether its charter was granted by a superior court or by a special act of the legislature, and that as the charter of Mineral Bluff was granted by the General Assembly in 1889, the provisions of the general charter for the incorporation of towns and villages by the superior courts became parts of the charter of Mineral Bluff, and so it had power to license a barroom. In our opinion, this contention is not sound. The clause of section 684 upon which plaintiffs in error rely applies only to towns and villages established after August 26, 1872, under the provisions of the law for the incorporation of towns and villages by the superior courts, and not to municipal corporations created after that date by special acts of the legislature. It has been decided by this court that the law embodied in the Political Code, §§ 683 et seq., for the incorporation of towns and villages, is not one of a general nature, having uniform operation throughout the State, and that therefore it is within the power of the General Assembly to pass an act incorporating a particular town or village. *Fullington* v. *Williams*, 98 *Ga.* 807. That decision was based upon the statute as it stood in 1895. Subsequently, when the particular provision in the statute which the court then held was sufficient to prevent its being a law of a general nature, having uniform operation throughout

the State, had not only been left out of the Code of 1895, but, in terms, repealed by the legislature in 1897, this court decided that this law for the incorporation of towns and villages was, on account of other provisions which it contained, still not a general law having uniform operation throughout the State, and that it was therefore competent for the General Assembly, in 1898, to create a municipal corporation by special legislative enactment. *Benning* v. *Smith,* 108 *Ga.* 259. As the legislature had the power in 1889 to grant a special charter to the Town of Mineral Bluff, it had the right to define and limit the powers of the municipal corporation which it created, and the corporation thus created could exercise such powers only as its creator conferred upon it. One legislature can not lawfully provide that whenever a subsequent legislature enacts a statute with reference to a given subject, such statute shall embrace certain specified provisions. It can not tie the hands of its successors, or impose upon them conditions, with reference to subjects upon which they have equal power to legislate.

As the sale of spirituous, vinous, or malt liquors, without first obtaining a license from the authorities authorized by law to grant license for such purpose, is a violation of the penal laws of the State (Penal Code, §§ 431, 433), and as the only license under which the defendants were conducting the barroom, in the town of Mineral Bluff, was one from the mayor and council of the town, which, for the reasons above given, was void, they were engaged in the unlawful sale of such liquors in that town, and the business in which they were engaged could, as we have seen, be abated by injunction as a public nuisance.

*Judgment affirmed. All the Justices concur.*