## UNION AND MECHANICS CLUB v. CITY OF ATLANTA.

1. Clubs and associations authorized by the tax act of 1909 (Civil Code (1910), § 933) to keep or permit to be kept in their club-rooms intoxicating liquors are such as are organized for the entertainment and comfort of their members, and not for gain, and which have a fixed place of meeting, a definite organization, with a continuing existence, in contradistinction to an ephemeral gathering for a particular occasion with no idea of permanency in the fellowship or constituency of its members.

2. The tax imposed is not an occupation or business tax, but is laid solely in the exercise of the police power of the State, and is not a license for the sale or for the keeping on hand of intoxicating liquors in any place prohibited by law.

3. In the absence of a clear delegation of power by the legislature to impose and collect a tax on social clubs as a condition precedent to a license permitting them to keep on hand intoxicating liquors, a municipal corporation can not exact such a tax. The City of Atlanta has no such power in its charter.

4. Inasmuch as the State by the enactment of the general prohibition act has made penal the sale of intoxicating liquors and the keeping on hand of such liquors at any public place or place of business, it is within the power of the City of Atlanta, under its general welfare clause, to establish reasonable rules and regulations designed to regulate social clubs so as to prevent their conduct in any other manner than as bona fide social clubs and to prevent any violation of the prohibition act.

5. The ordinance of the City of Atlanta imposing a tax as a condition precedent to the issuance of a license to a social club, permitting it to keep on hand intoxicating liquor, is an effort to collect a tax not authorized by its charter, and is therefore void, and its enforcement will be enjoined.

AUGUST 19, 1911.

Petition for injunction. Before Judge Bell. Fulton superior court. April 25, 1911.

On January 19, 1911, the following ordinance was adopted by the mayor and general council of the City of Atlanta: "Sec. 2. That any firm, person, or corporation desiring to operate, maintain, and to have or open up any club wherein lockers are provided for the use of members, fees charged either for membership or for use of lockers or for other purposes, having a club-house, club-room, parlors, or other general places of meeting, shall file a petition with the mayor and general council, asking for license therefor, and such petition shall give the name of the club, the name of the president, secretary or manager in charge thereof, its location, the number of members, and the amount of entrance fees paid or to be paid, dues and charges for lockers or locker service, and such

46

other information as will put the general council in full possession of the facts surrounding such club or proposed club, by which it can decide whether the same is a bona fide social or locker club. Sec. 3. That any club already licensed or hereafter licensed shall, when demand is made by any member of the general council or of the police department, at the club-room or place of meeting, exhibit the roll of membership upon which only bona fide members of the club shall be written. Said club, its officers, and employees shall at all times comply with this requirement, and shall keep said roll of membership at the club-room or place of meeting where same can at any time be produced when said demand is made. Sec. 4. That any social or locker club licensed as herein provided, charging membership dues and having or operating, in connection with the club, lockers or locker service or serving meals or lunches therein, or having any service such as billiards, cigars, etc., from which revenue is derived, shall pay to the City of Atlanta the sum of three hundred dollars per annum as a license or registration fee, same to be paid as other business licenses are collected. Sec. 5. That any person, firm, or corporation, their agents or employees, who shall maintain, operate, or carry on or take part in the maintenance or operation of any club in violation of the provisions of this ordinance, or without securing the permit or license therefor as herein provided, or without paying the license therefor as fixed in the preceding section, shall, on conviction in the recorder's court, be punished by a fine not exceeding five hundred dollars, or sentenced to work on the public works for not exceeding thirty days, either or both penalties to be inflicted in the discretion of the recorder. Sec. 6. That any club, officer, or employees thereof, who shall refuse to admit any member of the general council or of the department of police therein on demand, or who shall refuse to exhibit the roll of membership provided for in this ordinance, or who shall not permit an inspection of such club-room or meeting-place on demand, shall be deemed guilty of an offense, and on conviction in the recorder's court shall be punished as provided in section five of this ordinance. Sec. 7. That no license or permit shall be granted to any club or similar organization unless it appears that the same is a bona fide social or locker club, and not instituted or operated, with or without charter, for the purpose of providing a place wherein intoxicating liquors, beers, wines, etc.,

may be furnished under the form of a club, or in or at which there is now operated or maintained a bona fide social or locker club as herein provided for, and any person or persons, either by themselves or others, who shall undertake, with or without charter, to operate a club or like organization for the purpose of supplying liquors, wines, beers, etc., through the form of a club, without having, maintaining, or operating a bona fide social or locker club, shall be deemed guilty of an offense and on conviction in the recorder's court shall be punished as provided in section five of this ordinance. Sec. 8. That no license or permit shall be issued to any club, either with or without charter, unless it appears that same is operated, maintained, or proposed to be operated as a bona fide social or locker club, having a bona fide membership, club-house, room, or place of meeting maintained as a social club at which meals, lunches, etc., are served, lockers are maintained for the bona fide use of members only, charges made therefor, and not as a cloak or subterfuge for the sale of intoxicants, having a membership whose dues or entrance fees are sufficient to provide for the maintenance of such organization and the expenses thereof, and operated and maintained in an orderly manner [and] comply with all the laws of the State and the ordinances of the city."

On February 23, 1911, a license was issued under the terms of this ordinance, upon the payment of the tax therein provided, to the Union and Mechanics Club, a corporation organized as a fraternal and social club. After getting the license the club equipped a club-room and provided it with facilities as a locker club. The city, through its committee on police, made an investigation of the books and system of running the club, and recommended the revocation of the club's license. This recommendation of the committee on police was adopted and the license to operate the club was revoked, and the Union and Mechanics Club was notified to cease business or they would be prosecuted if they proceeded to operate the club after the revocation of their license. Whereupon the club filed its petition alleging that the ordinance was void as being unreasonable and without authority of the mayor and general council of the City of Atlanta to adopt it, and praying that the city be restrained from interfering with the club, its officers and employees, in conducting and maintaining the club. On the rule to show cause the city presented its demurrer and answer; and after

hearing evidence the court revoked the restraining order and re-fused an injunction. The plaintiff excepted.

*Green, Tilson & McKinney* and *Moore & Branch,* for plaintiff.

*J. L. Mayson* and *W. D. Ellis Jr.,* for defendant.

EVANS, P. J. (After stating the foregoing facts.)

The general prohibition act not only makes it a misdemeanor to sell and barter, either directly or indirectly, intoxicating liquors, but also makes it a misdemeanor for a person to keep such liquors at any public place or at his place of business. Penal Code (1910), § 426. The tax act of 1909 imposed a specific tax of $500 "upon every social or fraternal club, corporation, association, or organiza-tion of any kind of persons who shall keep or permit to be kept in any room or place (or any place connected therewith directly or indirectly) in which the members of such club, corporation, organ-ization, or association assemble or frequent, any intoxicating liquors, or spirituous or malt liquors of any kind; . . Provided, that nothing in this section shall be construed to license or permit the keeping of any intoxicating, spirituous, or malt liquors in any place now prohibited by law, or which may hereafter be so prohib-ited." Civil Code (1910), § 933. In the tax act the legislature was dealing with social or fraternal clubs, associations organized not for the purpose of trade and profit or for carrying on a business. The proviso in the act distinctly disclaims any intention to depart from the general policy of the prohibition act. Under the doctrine of noscitur a sociis, all organizations or clubs which permit lock-ers for the storing of intoxicating liquors must be of a social or fraternal character. The legislative conception of a fraternal club is one organized for the entertainment and comfort of its mem-bers—a definite organization with a continuing existence, in con-tradistinction to an ephemeral gathering for a particular occasion, with no idea of permanency in the fellowship and association of its constituency. The club contemplated is a voluntary association of individuals organized for fraternal and social purposes, and not for gain, and provided with a place of rendezvous for its mem-bers. The proviso of the tax act is in effect a legislative construc-tion of the prohibition act that the habitat of a social or fraternal club is not to be regarded as a public place or a place of business, since it is declared in the tax act that the placing of a tax on clubs of this kind shall not be construed to license or permit the keep-

ing of intoxicating liquors in any place prohibited by law. It was within the sphere of legislative action to define the meaning of a public place and place of business, and to classify the place or location of a social or fraternal club, where the members are accustomed to frequent, as not being comprehended within the terms "public place" or "place of business," and the legislature exercised its power of classification by putting a tax on social clubs. *Miller* v. *Shropshire*, 124 *Ga.* 829 (53 S. E. 335). A place of business, as used in the prohibition act, is a place where a calling for the purpose of gain or profit is conducted. Not only was it made penal to give away liquors to induce trade at any place of business, but the general prohibition act also made it a criminal offense to "manufacture or keep on hand at their place of business" any such liquor. Therefore the specific tax laid by the State upon social and fraternal clubs was imposed, not as a tax upon any business or occupation, but in the exercise of its police power in regulating the storage and use of intoxicating liquors. The exaction of a tax on locker clubs is not a permission to such clubs to do a blind-tiger business or to evade the liquor laws prohibiting the sale of intoxicating liquor. Sales of intoxicating or malt or other drinks which if drunk to excess will produce intoxication can not be legally made at such clubs, since such sales are denounced as criminal by the general prohibition act. The authority to store intoxicating liquor in the club-room for the use of club members does not embrace permission to sell it or to use it in any way prohibited by law.

The charter of the City of Atlanta contains a general welfare clause of very ample powers. Under the welfare clause the city may establish suitable ordinances for administering the government of the city, the maintenance of peace and order, the preservation of the health of its inhabitants, and for the performance of the general duties required of it in its charter. Where the State has established its policy to regulate under the police powers particular conditions, it is within the power of a municipal corporation, under its general welfare clause, to establish any reasonable ordinance designed to enforce this general policy. The State law prohibits a dealer from pursuing his ordinary calling upon the Sabbath day, and it was held that it was competent for the City of Atlanta by ordinance to compel all dealers to keep the doors of

their houses of business shut on the Sabbath day; the design of the ordinance tending to prevent the violation of the State law, as well as preserving the public respect for the Lord's day. *Karwisch* v. *Atlanta*, 44 *Ga.* 204. Where the sale of liquor was forbidden in a county in which a municipality was situated, it was held to be within the police power, under the general welfare clause, to inhibit the keeping of intoxicating liquors for illegal sale, and the keeping of places to conduct such sale. *Bagwell* v. *Town of Lawrenceville*, 94 *Ga.* 654 (21 S. E. 903) ; *Reese* v. *City of Newnan*, 120 *Ga.* 198 (47 S. E. 560) ; *Tucker* v. *City of Moultrie*, 122 *Ga.* 160 (50 S. E. 61). While the city may, under its general welfare clause, establish ordinances intended to aid in the regulation of those matters included in the police power as manifested by the general policy of the State in the trend of its legislation, yet a city can not, solely in the exercise of its police power, impose a tax for revenue, and a license when imposed for revenue is not a police regulation and can only be upheld under the power of taxation. The city has no power to impose a tax upon a locker club as a business or avocation tax; because a social club authorized to keep intoxicating liquor on storage is not conducting a business within the purview of the general taxing act. The legislature may confer upon a municipality the power to collect a license tax, but, in the absence of such express authority, the city can not by ordinance require of a social or fraternal club the payment of a license tax as a permit or condition precedent to the exercise of the privileges of a social club. *Walker* v. *McNelly*, 121 *Ga.* 114 (48 S. E. 718).

While the ordinance requiring a license or permit of a social club contains some regulatory features, these are so inseparably connected with the provision for obtaining a license that they become incidental to the main purpose of the ordinance, which is to require a license tax as a condition precedent to the opening and maintaining of a social club. As we have pointed out, the City of Atlanta has no express charter power to require a license tax of a social club as a condition precedent to its keeping on hand intoxicating liquors, and such power is not to be implied under the general welfare clause. Treating the ordinance as one requiring a license tax from a social club as a permit or prerequisite to its keeping on hand intoxicating liquors, it is ultra vires and void.

It is not to be understood, however, that the city is without authority to adopt a reasonable ordinance regulative of social clubs under the police power contained in its general welfare clause. The policy of the State, as disclosed in the general prohibition act, is to prevent the sale of intoxicating liquor and the keeping of intoxicating liquor at a public place or at a place of business; and in aid of that policy the city may establish reasonable rules and regulations tending to enforce that general policy by regulating such clubs so as to prevent all but bona fide social clubs (such as are properly licensed by the State) from keeping or permitting to be kept any intoxicating liquors in their club-rooms. But as the ordinance in question imposes a privilege tax which the city has no right to exact, and makes the payment of the tax a condition precedent to the issuance of a license, the city should be enjoined from forcing the closing of the club-room under penalty of a prosecution under the void ordinance.

*Judgment reversed. Beck, J., absent. The other Justices concur.*