LEWIS & HOLMES MOTOR FREIGHT CORPORATION
*v.* CITY OF ATLANTA *et al.*

No. 14478.   APRIL 14, 1943.   REHEARING DENIED MAY 8, 1943.

*Hirsch, Smith, Kilpatrick, Clay & Cody* and *Devereaux F. Mc-Clatchey,* for plaintiff.

*J. C. Savage, E. L. Sterne, J. C. Murphy,* and *Frank A. Hooper Jr.,* for defendants.

REID, Chief Justice. The issue is purely one of law, and narrows considerably under the able briefs and arguments submitted.

The city contends that under its charter, which provides that its mayor and council "shall have full power and authority and they shall provide by ordinance for the assessment, levy and collection of an ad valorem tax on all real and personal property which under the laws of this State is subject to taxation within the incorporate limits of said city," it is authorized to collect a property tax upon the basis appearing in the statement of facts. The ordinance relied upon by the city does not undertake specifically to reach such a situation or to establish any "formula" for taxing such movable personalty in transit, but provides a levy on "all real and personal property which under the laws of the State and under the charter of the city as amended is subject to taxation by the city." The motor corporation, while conceding, under authorities which will be mentioned, that the State has the power to render subject to taxation property moving in and out of its borders as here shown, contends that in the absence of a statute which would have the effect of giving a taxable situs to such personalty, by changing the rule that unless actually located within the State. it would follow the domicile of its non-resident owner, the municipality is wholly lacking in the authority claimed by it. In the presentation of the case there has been much helpful discussion with reference to the principles that have by now been laid down with regard to the power of a State to tax or authorize the taxing of that class of property involved. Some attention will later be given to the decisions from various jurisdictions dealing with that question; but we have reached the conclusion that the primary question here to be determined will depend upon the laws of our own State and the decisions of our own courts, although it is admitted that this is a case of first impression so far as these facts are concerned.

At the very outset it may be observed: "A municipal corporation can levy no tax, general or special, upon its inhabitants, or upon the property therein, unless the power to do so has been plainly and unmistakably conferred by the State. *Southern Express Co.* v. *Rose,* 124 *Ga.* 581 (3), 588 (53 S. E. 185, 5 L. R. A. (N. S.) 619); *Lane* v. *Unadilla,* 154 *Ga.* 577 (114 S. E. 636)." *O'Neal* v. *Whitley,* 177 *Ga.* 491, 492 (170 S. E. 376). This rule is well grounded in our State, and has been strictly adhered to in many decisions. It is but a part of the general prevailing rule. "Municipal corporations, unlike the sovereign State, possess no inherent

power of taxation. The exercise of such power is dependent upon· legislative or constitutional grant. Any· attempt to exercise the taxing power, as by levying an ad valorem tax upon property in a municipality, which is found not to be°within the powers granted to the municipality, is ultra vires and void." 38 Am. Jur. 68, § 381. "With respect to extent and limits of municipal taxing power, it is a generally recognized principle that a grant by the legislature of the taxing power to a municipal corporation is to be strictly construed. It is likewise an established rule that the authority of municipalities to levy a tax must be made clearly to appear, and that doubts, if any, as to the power sought to be exercised must be resolved against the municipality; power to tax is a separate, independent power, and exists in municipal corporations only to the extent to which it is clearly conferred by their charters or other State statutes, and its existence can not be inferred or deduced from other powers conferred." 38 Am. Jur. 72, § 385. In speaking of the limitations imposed on municipalities and counties this court, in *Albany Bottling Co.* v. *Watson,* 103 *Ga.* 503, 505 (30 S. E. 270), stated: "They can exercise no powers except those which are conferred upon them by legislative action, or such as are necessary to the exercise of their corporate powers, the performance of their corporate duties, and the performance of the purposes of their association. 1 Dillon's Mun. Corp. (4th ed.) 146. This is a principle well established, and must be closely adhered to when such a corporation undertakes to exercise the power of taxation within its limits. The power to tax is incident to the State, because of its sovereign character. Neither counties nor municipal corporations of any character possess this power to any extent unless conferred by the constitution or the laws of the State, and therefore such power can only be exercised when delegated in plain and unmistakable terms, or when it results by necessary implication from other powers expressly granted. 25 Am. & Eng. Enc. L. 580. The exercise of this power being so limited and restricted, the burden is on every political division of the State, which demands taxes from the people, to show the authority to exercise it in the manner in which it has been imposed. Cooley on Taxation (2d ed.), 678." See *Blackman Health Resort* v. *Atlanta,* 151 *Ga.* 507 (107 S. E. 525); *Ga. Ry. & Power Co.* v. *Railroad Commission,* 149 *Ga.* 1, 12 (98 S. E. 696, 5 A. L. R. 1); *Peginis* v. *At-*

*lanta,* 132 *Ga.* 302 (63 S. E. 857, 35 L. R. A. (N. S.) 716); *Walker* v. *McNelly,* 121 *Ga.* 114, 118 (48 S. E. 718); *Lockwood* v. *Muhlberg,* 124 *Ga.* 660 (53 S. E. 92); *Suttles* v. *Pullman Co.,* 187 *Ga.* 217 (2), 220 (199 S. E. 821).

A further rule of ancient origin and of equally general application is that personalty as respects its situs for taxation follows the domicile of the owner. *County of Walton* v. *County of Morgan,* 120 *Ga* 548 (5) (48 S. E. 243); *County of Morgan* v. *County of Walton,* 121 *Ga.* 659, 661 (49 S. E. 776); *High Shoals Mfg. Co.* v. *Penick,* 127 *Ga.* 504 (56 S. E. 648). Such has been the rule consistently applied in this State. As pointed out by Mr. Justice Lamar in *County of Walton* v. *County of Morgan,* supra, it was the general policy of this State before 1868 that the situs of all property for taxation, whether real or personal, was determined by the residence of the owner, and that in the absence of statute "personal property is to be taxed where the owner resides." This rule is, however, subject to exceptions and modifications, as for instance where the property by virtue of being located elsewhere may become by its location or use taxable at such location, thus attaining a definite and fixed situs apart from the residence or domicile of the owner. "The power of taxation by any State is limited to persons, property, or business within its jurisdiction. Personal property in the absence of any law to the contrary, follows the person of the owner, and has its situs at his domicile. But, for the purposes of taxation, it may be separated from him, and he may be taxed on its account at the place where it is actually located. . . If the State has actual jurisdiction of the person of the owner, it operates directly upon him. If he is absent and it has jurisdiction of his property, it operates upon him through his property." Tappan *v.* Merchants National Bank, 86 U. S. 490 (22 L. ed. 189). We have recognized some of the exceptions, in such cases as *Armour Packing Co.* v. *Augusta,* 118 *Ga.* 552 (45 S. E. 424, 98 Am. St. R. 128); *Armour Packing Co.* v. *Savannah,* 115 *Ga.* 140 (41 S. E. 237); *Armour Packing Co.* v. *Clark,* 124 *Ga.* 369 (52 S. E. 145); *Suttles* v. *Northwestern Mutual Life Insurance Co.,* 193 *Ga.* 495 (19 S. E. 2d, 396). It is also true that while prima facie personal property is returnable where the owner resides, under the constitution the legislature may fix a different situs for all personal property. *Morgan County* v. *Walton County,* supra. In *O'Neal* v.

*Whitley,* supra, the City of LaGrange, the charter of which provided that its mayor and general council should "have full power and authority, and shall provide by ordinance, for the assessment and collection of an ad valorem tax on real and personal property within the corporate limits of said city, which is subject to be taxed by the State," sought to levy a tax against Whitley on certain equipment owned by him, none of which had ever been in the city but instead was habitually moved by him from place to place in his business elsewhere. This court, applying the general rule, held that for the purpose of taxation the situs of personal property is at the domicile of the owner. It was pointed out that constitutional provisions (although referring to a case from Texas dealing with the constitution of that State) with regard to the assessment of property in the county where it is situated do not define or determine its situs "for purposes of taxation, other than in accordance with the usual rules governing situs." The decisions in *Wright* v. *Brunswick,* 140 *Ga.* 231 (73 S. E. 839, Ann. Cas. 1914D, 287), and *St. Simons Transit Co.* v. *Brunswick,* 141 *Ga.* 477 (81 S. E. 199), applied the general rule that as to movable property the situs was that of the residence of the owner, and in the *Wright* case it was pointed out that the City of Brunswick had no statutory authority to fix the taxable situs of movable property of a non-resident as being within the city for the purpose of taxation.

But it is contended by the city that since the State by its charter provision granted to it the right to levy "an ad valorem tax on all real and personal property which under the laws of this State is subject to taxation within the incorporate limits of said city," and since under our general taxing statute (Code, § 92-101) all real and personal property owned by residents or non-residents is liable to taxation, the city may proceed as it has undertaken to do. If the property of the motor corporation sought to be taxed was located within the city, or, under such rules as announced in *Suttles* v. *Northwestern Mutual Life Insurance Co.,* supra, had acquired a situs within its limits, it would of course be subject. It is to be remembered, however, that the city is not undertaking in this case to tax any specific property "within the incorporate limits of said city." In fact it is not undertaking to tax any specific property anywhere, but rather a "daily average" of the composite value of such property of the motor corporation as may be moved within

and without the city. The city does not contend that the trucks being moved into and out of its limits were physically present on the taxing date in such a way as to render them taxable under ordinary rules as the property of a non-resident. The assessment is based upon an average of five trucks and upon an average value of one of such trucks, as we take it, virtually conceding that no one of the trucks would be subject as such to the ordinary property tax. While it is true, as was held in *Johnston* v. *Macon,* 62 *Ga.* 645 (6), that the State "may grant the power over any of its own subjects of taxation; and the municipal authorities may tax under the grant whether the State see fit to exercise the power on its own account or not," that principle would not seem to clothe the municipality with power to declare a situs of property, so as to render it taxable where otherwise it was not taxable. It has already been pointed out that the State may separate such movable property and detach it from the anchorage of its owner's domicile (*Walton County* v. *Morgan County,* supra); and this has been generally held on questions of due process under the United States constitution. Pullman Palace Car Co. *v.* Pennsylvania, 141 U. S. 18 (11 Sup. Ct. 876, 35 L. ed. 613); Union Tank Line Co. *v.* Wright, 249 U. S. 275 (39 Sup. Ct. 276, 63 L. ed. 602). Georgia, as most States, has taken this step with regard to railroad and sleeping-cars, tank-cars, etc., which in interstate commerce can not be said to have in the ordinary sense any regular location or situs (see Code, §§ 92-2601, 92-2605), and as to such property of railroad companies has provided that when it "is within the limits of any municipal corporation" it is subject to taxation by such municipalities (Code § 92-2801); and by § 92-2803 it has provided for a system of distribution to such municipalities of their proportionate part of such taxes in accordance with formula set up under chapter 92-27 of the Code for county participation. As respects property of the class here involved no such statutes have been enacted, thus leaving the property as respects its liability to taxation to stand on the basis of any other movable personalty, and therefore to be governed by the familiar principles already discussed.

In Mississippi, where the general taxing statute is similar to our own, a statute was enacted providing for the taxation of movable railroad property. Previously such property had apparently been left to stand under the normal rules; to be taxed if it had acquired

a situs under the rule; otherwise to follow the domicile of its non-resident owner. After the enactment of their statute the taxing authorities sought to use its formula and machinery to assess the Union Tank Car Company on account of taxes claimed for previous years. That resulted in litigation reported in State ex rel. Knox v. Union Tank Car Co., 151 Miss. 797 (119 So. 310). The case turned on whether or not the newly enacted statute could be given retroactive effect; and it was held that this could not be done. That holding was on the premise that before the enactment of the statute the property did not have such a situs as to make it taxable under their laws; and on that question it was said: "As the situs of the Union Tank Car Co., appellee, is in the State of New Jersey, that State, as a general rule, would be considered as the situs of all its personal property, until this State enacted a statute fixing its taxable situs in Mississippi. In 56 Am. D. 535, we find a helpful note, as follows:

"'This peculiar property, which has furnished the topic of so much discussion, is held to be situated, in the absence of a special statute, in the town where the principal office of the corporation is; that is, at the corporate residence. Without the help of a statute, it is incapable of acquiring a permanent locality or situs separated from the owner's residence,' citing: 'Mohawk etc. R. R. Co. v. Clute, 4 Paige [N. Y.] 384; Appeal Tax Court v. Western Md. R. R. Co., 50 Md. 274; Philadelphia, Wilmington etc. R. R. Co. v. Appeal Tax Court, 50 Md. 397; Appeal Tax Court v. Northern Cent. Ry. Co., 50 Md. 417; Appeal Tax Court v. Pullman Palace Car Co., 50 Md. 452; Kansas City etc. R. Co. v. Severance, 55 Mo. 378; City of Dubuque v. Illinois Cent. R. R. Co., 39 Iowa, 56; Orange etc. R. R. Co. v. Alexandria, 17 Grat. [58 Va.] 176.'

"A dependable authority supporting this view is Marye v. B. & O. R. R. Co., 127 U. S. 117, 8 S. Ct. 1037, 32 L. ed. 94. This case arose over an attempt by the State of Virginia to impose and collect a tax on movable property, engines, cars, etc., of a Maryland corporation. The Supreme Court of the United States held, that: 'It is not denied, as it cannot be, that the State of Virginia has rightful power to levy and collect a tax upon such property used and found within its territorial limits, as this property was used and found, if and whenever it may choose, by apt legislation, to exert its authority over the subject.' "

The Mississippi court quoted further from the Marye case, where it was pointed out upon authority that before such property otherwise having its taxable situs at the domicile of its owner could be subjected to taxation in Virginia, an *appropriate* statute would be necessary. To follow the rule somewhat further, in Mississippi we find in City of Jackson *v.* Dixie Greyhound Lines Inc., 192 Miss. 133 (4 So. 2d, 721), upon facts similar to those in the present case, except that the City of Jackson sought to tax all of the buses operating over regular lines into and out of the limits of the city, the Supreme Court held that in the absence of a statute "the buses are without situs for ad valorem taxation, unless the legislature has laid down a method of taxation." The controlling factor in that case was not that the city had undertaken to tax all of the buses, but whether in the absence of a statute, not having a situs otherwise, they could be taxed at all. In Alabama the courts have ruled likewise. In City of Bessemer *v.* Southern Ry. Co., 157 Ala. 428 (48 So. 103), the court recognized that while a State through its legislature may separate the situs of personal property from the domicile of its owner and thereby subject it to taxation, unless it does enact such a statute a subsidiary taxing jurisdiction has no authority to employ such a method for itself. The court said: "Under these principles, doubtless it would be within the power of the supreme legislative department of the State, in fixing the situs of this class of property and providing for its assessment, to make provision for municipal taxation as well as for county taxation. In the general law on this subject, our legislature has not made any provision for taxation of rolling stock by cities and towns. Indeed it would be difficult to say that, because a certain number of cars are continuously in the State, a proportionate number would be continuously in any city or town in the State. The conditions of business are so different—one city or town having industries in which it would detain a number of cars continuously, while in another the cars merely pass through, and in small numbers—that it would seem that only a deliberative body should be charged with the duty and responsibility of making such a distribution." Florida has followed this principle. In Harkness *v.* Seaboard Air-Line Ry., 99 Fla. 1027 (128 So. 264), it appears that there was a constitutional provision authorizing the State comptroller to levy taxes on movable railroad property. A municipality

undertook, however, to levy an independent assessment. The court said: "This provision of the constitution, however, could not be extended to authorize the city to make its own evaluation and assessments upon property taxable by the municipality but not located within the municipality."

The city places strong reliance upon Johnson Oil Refining Co. v. Oklahoma, 290 U. S. 158 (54 Sup. Ct. 152, 78 L. ed. 238). In that case a corporation of Illinois owned tank cars which it leased to a refinery in Oklahoma. These cars were moved from the refinery to various places out of the State of Oklahoma, and were generally in continuous movement, but there was usually an accumulation of them remaining on the tracks in Oklahoma for various periods of time. A local unit of the Oklahoma taxing authorities assessed taxes against the entire fleet of cars. About the same time apparently certain counties or subdivisions of the State government as taxing units undertook to make assessments upon the "average number" formula; and as a result these cases were consolidated in the Supreme Court of Oklahoma, and that court, In Re Johnson Oil Refinery Company, 162 Okla. 185 (19 Pac. 2d, 168), held that there was no law authorizing a tax based upon an "average number" of cars present on a given day, and that there was no application of that principle by administrative officers; and further held that all of the tank cars were taxable as personal property of the foreign corporation in the county in Oklahoma where the refinery was located. The United States Supreme Court (290 U. S. 158, supra) reversed this holding, and pointed out in the opinion, and after a full discussion of cases on the subject, that "When individual items of rolling stock are not continuously the same, but are constantly changing as the nature of their use requires, this court has held that a State may fix the tax by reference to the average number of cars found to be habitually within its limits." Citing: Marye v. Baltimore &c. R. Co., 127 U. S. 117 (8 Sup. Ct. 1037, 32 L. ed. 94). The Supreme Court thus marked the limit to which the State of Oklahoma could go with reference to such property. It could by apt legislation tax upon the average number or upon some other fair apportionment that would not be arbitrary and that would accord due process. See Union Tank Car Co. v. Wright, supra. But it could not tax the entire fleet of cars. Following this decision, when the case went back the Su-

preme Court of Oklahoma, despite its previous determination as pointed out above, that there was no statute authorizing the application of the principle of a formula or of an average number, apparently construed the meaning of the United States Supreme Court decision to be that in that particular case it was correct to apply the average-number theory, although in point of fact the Supreme Court merely reversed the Oklahoma court's decision for allowing the tax on the whole fleet, at the same time explaining the limits to which a State might go with reference to taxing such property. We say this because, without further developments in the case upon its return, the Oklahoma court held in Board of Commissioners of Pawnee County v. Johnson Oil Refining Co., 167 Okla. 452 (30 Pac. 2d, 692), that the "average number" of cars present in the State under such circumstances was subject to state and county taxes. So if the holding in this case were to be accepted at its face value, and we were inclined to follow it, the city's contention would be sustained. But apart from the question whether such view be sounder than those set forth by the courts of Mississippi, Alabama, and others, we think it should be read in the light of the explanation set forth above.

Another case relied upon by the city is Union Tank Car Co. v. McKnight, 84 Fed. 2d, 421. In that case tank cars belonging to a New Jersey corporation were leased to an Illinois refinery for transportation of petroleum products in interstate commerce, and the Circuit Court of Appeals held that under the Illinois statute, the terms of which, it was said, describing taxable property, "are most comprehensive and therefore are capable of incompassing rolling stock belonging to a foreign corporation habitually found in the State," the taxing of the average number of cars present in the State could be sustained. For interpretation of the State statute they relied upon Keith Railway Equipment Co. v. Board of Review, 283 Ill. 244 (119 N. E. 302), and cited Johnson Oil Co. v. Oklahoma, supra. There again, as in the instance of the Oklahoma interpretation of the United States Supreme Court decision, it is our opinion that the Circuit Court of Appeals gave an effect to the Illinois statute which was not authorized by the decision of the Illinois Supreme Court. We have examined the statute as dealt with in the Illinois case, and it is discovered that the effect of the Keith Railway Equipment decision was to hold void an as-

sessment which had been made on all of the cars of the Illinois corporation, both those located within and without the State. The holding of the court was that since they were brought in and out of the State, only those which could be said to be located within the State were taxable.

Thus from what has been said we come to the conclusion as announced by Simpson, J., of the Alabama Supreme Court in City of Bessemer v. Southern Railway Co., supra, that while the principle on which this character of taxes has been sustained is that it lies within the power of the State to separate the situs from the ownership of personal property as to that class of personalty which is continuously kept and used, it should pay a part of the burden of taxation; and while it might be within the power of the legislative department in fixing the class of property and providing for its assessment to make provision for municipal taxation, unless it does so, the levying of such a tax by the municipality would be beyond its power. The State could not permit the municipality to assume such a legislative function as to change the existing tax situs. Compare *Henderson* v. *Heyward,* 109 *Ga.* 373, 380 (34 S. E. 590, 47 L. R. A. 366, 77 Am. St. R. 384); *Watson* v. *Thomson,* 116 *Ga.* 546, 549 (42 S. E. 747, 59 L. R. A. 602, 94 Am. St. R. 137). Under the foregoing views the judgment of the trial court is                                                 *Reversed. All the Justices concur.*